Kevin PAPPAS, Plaintiff–Appellant,

v.

MIDDLE EARTH CONDOMINIUM AS-SOCIATION; Castle Rock Management Company, Defendants–Appellees.

No. 930, Docket 91–7942.

United States Court of Appeals, Second Circuit.

Argued March 3, 1992.

Decided May 8, 1992.

Bradley D. Myerson, Manchester Center, Vermont (Myerson Law Offices, of counsel), for plaintiff-appellant.

John Paul Faignant, Rutland, Vermont (Miller & Faignant, P.C., of counsel), for defendants-appellees.

Before: CARDAMONE and ALTIMARI, Circuit Judges, and TELESCA, District Judge.*

CARDAMONE, Circuit Judge:

This appeal arises from a suit brought by Kevin Pappas for serious injuries he suffered when he slipped and fell on an icy walkway leading to his condominium near the Sugarbush Ski Area in Warren, Vermont. Plaintiff, a resident of New Jersey, brought a diversity action charging negligence against Middle Earth Condominium Associates, owner of the property, and Castlerock Management Company, a Vermont corporation, whose contract to manage and maintain the property included responsibility for snow and ice removal. The case was tried before a jury on July 16–18, 1991 in the United States District Court for the District of Vermont (Billings, C.J.).

On the appeal in this diversity case a straight forward evidentiary issue is raised and, more troubling, an alleged issue of regional bias engendered by defense counsel in his summation. Exact and equal justice to all regardless of politics, religion, race or region is the lofty goal constantly pursued in federal court; when that goal is lost sight of however briefly every litigant may not then be said to have been rendered what is due. Because we think the eviden-

* Hon. Michael A. Telesca, Chief Judge, United States District Court for the Western District of New York, sitting by designation.

tiary ruling was incorrect and because prejudice may have entered into the jury's deliberations on account of defense counsel's regional comments, we reverse and order a new trial.

## FACTS

Immediately after arriving in Vermont after 10 P.M. on the evening of February 25, 1987, and while carrying his ski boots from the parking lot, the then 33–year–old Kevin Pappas slipped and fell on a dome of ice on a walkway that ran alongside a building leading into a condominium that he and a group of friends had rented for a five-day ski vacation. He suffered a severely broken ankle that required three operations, and which later was surgically fused. Plaintiff's suit sought damages for pain and suffering and future lost earnings resulting from his loss of employment as a mate on a tugboat for Texaco Marine Services.

The fall occurred after Pappas had proceeded downstairs from the parking lot, walked alongside the condominium building and reached its corner. Just after turning the corner, he stepped on the dome of ice and fell. The ice build-up measured three feet in circumference and was four to six inches thick at its peak. One of plaintiff's friends, who arrived at the condominium before Pappas, testified that fresh fallen snow obscured the walkway. Another witness, Sherry Cherris, who, with her husband, was part of the vacationing group, testified that she had to be carried over this icy patch to reach condominium number 23 where the group was staying.

The maintenance personnel manager for Castle Rock admitted that his employer was responsible for maintaining and managing Middle Earth's 67 condominium units. He explained the procedures for removing ice and snow from the walkways, and stated that deficiencies in the design of the condominiums may have been responsible for an increased incidence of ice on the walkways, a condition of which he was aware before appellant's fall occurred. He stated that complaints about icy walkway conditions on the night of the accident were responded to by one of two night shift employees on duty at the time.

After Pappas fell, Sherry Cherris telephoned the management company, using a number she found pinned on the refrigerator, complaining of the walkway's icy condition. A man with a shovel and a bucket eventually appeared. At trial, plaintiff sought to introduce through Ms. Cherris the statements this employee made regarding the performance of Castlerock employees in maintaining the walkway. The trial court refused to admit it, ruling that an insufficient foundation had been laid regarding the employee's identity and the scope of his responsibilities.

Plaintiff then presented four witnesses who testified with respect to damages. The defense called no witnesses and presented no evidence. Plaintiff's injury and damages (not their amount) were conceded, and the only issues for the jury were defendants' negligence, plaintiff's contributory negligence and, were the jury to reach it, the amount of plaintiff's damages. Defense counsel's brief summation included the following:

DEFENDANTS' COUNSEL: ... There's no question there's a legitimate injury here. And we didn't even ask Dr. Abrams any question, and that's why. We do not dispute that, yes, there was an injury here. But isn't what they're really asking is that they can come up from New Jersey—

PLAINTIFF'S COUNSEL: Objection

THE COURT: What's the basis of your objection?

PLAINTIFF'S COUNSEL: I think that's really getting inflammatory. It's appealing to regionalism rather than the facts of the case.

THE COURT: Objection overruled. You may proceed.

DEFENDANTS' COUNSEL:—if they can come up here from New Jersey to Vermont to enjoy what we experience every year, for those of us who are here originally for most of our lives, for most of us who come here for our own reasons, for the rest of the time that we're here, and without a care in the world for their own

safety when they encounter what we, ourselves do not take for granted, and they can injure themselves, and they can sit back and say, "Well, yes. I'm on long-term disability, and I sit around and I watch golf on TV, but I'd like you to retire me. Retire me now. Pay me now what I would get or what I claim I would get until I work for age 65," regardless of the fact that there are no employees over the mid–40's in the very job for Texaco, which we learned was a very large company.

Later in the same summation, counsel for defendant continued, "Would we go to New Jersey and walk on a tugboat without looking where we were going?" In its charge the trial judge simply cautioned the jury that arguments and questions of counsel were not evidence. After three hours of deliberation, the jury returned a verdict in favor of the defendants.

Because the jury specifically found that the defendants were not negligent, it did not reach the issue of plaintiff's contributory negligence. Plaintiff moved for a new trial on the grounds that the testimony of Ms. Cherris had been excluded erroneously and that defense counsel's summation prejudicially engendered a regional bias against him. The district court again rejected the argument for admission of Ms. Cherris' statements on the grounds that there was an inadequate foundation to receive it. With respect to defense counsel's summation, the trial court ruled that rather than calculated to elicit a jury's regional bias, the comments addressed defendants' argument that plaintiff was contributorily negligent in not exercising the degree of care required for conditions typically found in Vermont, but possibly unfamiliar to someone from another state. From this order of the district court, plaintiff appeals.

## DISCUSSION

### I Vicarious Admission

We turn first to the district court's refusal to admit the testimony concerning the statement of the unidentified Castlerock employee who responded to Ms. Cherris' telephone complaint. In its post-trial rul-

ing denying a new trial, the trial court stated that "[p]laintiff did not adequately show that the employee who allegedly made the statement to the witness was speaking about a matter over which he had been granted authority by Castlerock as is required by [Fed.R.Evid. 801(d)(2)(D) ]. It does not appear to this court under the facts presented that such authority was granted." On the contrary, we think an adequate foundation was shown and that Ms. Cherris' testimony respecting what Castlerock's employee told her should have been admitted.

Rule 801(d)(2)(D) provides that "[a] statement is not hearsay if ... [it] is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency of employment, made during the existence of the relationship." The Advisory Committee Notes observe that because admissions against a party's interest are received into evidence without many of the technical prerequisites of other evidentiary rules—such as, for example, trustworthiness and personal knowledge—admissibility under this rule should be granted freely. Liberal admissibility of this sort of proof is grounded on certain premises. One is that an employee is usually the person best informed about certain acts committed in the course of his employment, and another is that while still employed an employee is unlikely to make damaging statements about his employer, unless those statements are true. See McCormick on Evidence § 267 (2d ed. 1972); 2 Wigmore, Evidence § 280(2) (Chadbourn rev. 1979).

A sufficient foundation to support the introduction of vicarious admissions therefore requires only that a party establish (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency. See, e.g., United States v. Pilarinos, 864 F.2d 253, 257 (2d Cir.1988); Davis v. Mobil Oil Exploration & Producing Southeast, Inc., 864 F.2d 1171, 1173–74 (5th Cir.1989); Northern Pacific Ry. v. Herman, 478 F.2d 1167, 1171 (9th Cir.

1973). The authority granted in the agency relationship need not include authority to make damaging statements, but simply the authority to take action about which the statements relate. *See* J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(D)[01] (1991).

■ Although the statement to be introduced may not itself be relied upon to establish the alleged agency relationship, *United States v. Portsmouth Paving Corp.,* 694 F.2d 312, 321 n. 12 (4th Cir. 1982), this foundational predicate may be established by circumstantial evidence. *See United States v. Pacelli,* 491 F.2d 1108, 1117 (2d Cir.) (agency may be inferred from surrounding circumstances), *cert. denied,* 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 49 (1974); *Davis,* 864 F.2d at 1174 (absent established identity, sufficient evidence required to find declarant an agent); *O'Neal v. Morgan,* 637 F.2d 846, 851 (2d Cir.1980) (identity of declarant party not required in order to introduce admission), *cert. denied,* 451 U.S. 972, 101 S.Ct. 2050, 68 L.Ed.2d 351 (1981). *See also United States v. Cruz,* 910 F.2d 1072, 1081–83 (3d Cir.1990) (statement of unidentified co-conspirator admissible under Fed.R.Evid. 801(d)(2)(E); existence of conspiracy may be established by circumstantial evidence), *cert. denied,* —— U.S. ——, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991). Here, the district court made an express finding that the declarant, who arrived at the condominium with a shovel and a bucket after the occupants of condominium 23 had called Castlerock to complain about the icy walkway, was an employee of the management company. Thus, the agency relationship was sufficiently established without identifying the employee.

■ This proof was not admitted because plaintiff had failed to establish the scope of the agency relationship between the unidentified employee and defendant Castlerock. But circumstantial evidence may establish the scope, as well as the existence, of the agency relationship. The personnel manager for Castlerock declared that one of two employees responsible for snow and ice removal would have been on duty on the night of the accident. The employee who responded to the telephone complaint arrived carrying appropriate implements for ice removal. Defendants' suggestion that this circumstantial evidence does not demonstrate that such person was authorized to maintain the sidewalk because the unidentified declarant may well have been a night shift bookkeeper rather than one of the two maintenance employees is fanciful and unpersuasive. *See also Portsmouth Paving Corp.,* 694 F.2d at 321–22 (circumstantial evidence that unidentified person answering the phone was secretary authorized to relay message of employer sufficiently established scope of agency).

■ Nor is the availability of the declarant relevant under Fed.R.Evid. 801(d)(2)(D). Although such availability may be a critical issue when dealing with hearsay statements that are otherwise generally inadmissible, *see* Fed.R.Evid. 804, Rule 801 defines certain statements as *not being hearsay.* It follows therefore that whether plaintiff should have made greater efforts to depose the unidentified declarant has no bearing on the issue of the proffered testimony's admissibility.

In light of the liberal treatment proof under Rule 801(d)(2)(D) is accorded, there is sufficient circumstantial evidence in this case to demonstrate that the declarant's agency relationship extended to maintaining the walkway. As a consequence, Ms. Cherris should have been permitted to testify concerning the declarant's statements regarding complaints about defendants' performance in maintaining it. This testimony would have provided probative evidence of defendants' knowledge of the icy conditions prior to plaintiff's accident, a fact that a jury would find extremely relevant in determining whether a legal duty had been breached. Since the only other evidence of prior knowledge by the defendants related to the design of and drainage from the condominium roof, the effect this evidence might have had upon the jury's verdict is potentially significant. Its exclusion therefore was an error that requires a new trial.

## II Regional Bias

Appellant asserts as a second issue on appeal that defense counsel's summation was deliberately designed to arouse the regional prejudice of the jury. Because the district court overruled plaintiff's prompt objection as soon as counsel's remarks took this tack, and then failed to give a curative instruction, plaintiff contends a regional bias was engendered that might have influenced the jury verdict.

■ We look first at the nature of the remarks alleged to have improperly influenced the jury. The substance of defense counsel's summation was that "They"—apparently referring to all those in plaintiffs' skiing party, some of whom were witnesses for plaintiff at trial—"can come up here from New Jersey to Vermont to enjoy what we experience every year." What counsel appears to be suggesting in this argument is that plaintiff and his party were in Vermont to enjoy the snow that people in Vermont are forced to "experience" every year. Counsel continues in like vein later, when he asks would "we"—apparently including himself and the Vermont-resident members of the jury as one group—"go to New Jersey and walk on a tugboat without looking where we were going?" In that way defense counsel made a blatant "us-against-them" appeal to the jury.

Diversity jurisdiction—of which this suit is an example—was in the view of some scholars instituted to obviate the fear that state courts would be prejudiced against out-of-state litigants. See Wright, Federal Courts § 23 (4th ed. 1983). Whether or not this is the sole reason that diversity jurisdiction has existed since the First Judiciary Act of 1789, diversity jurisdiction has traditionally been justified on this basis. As expressed by James Madison during the debates on ratifying the Constitution: "A citizen of another state might not chance to get justice in a state court, and at all events he might think himself injured." 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3601 (1984) (quoting 3 Elliot, Debates on the Federal Constitution, 1836, p. 486). Chief Justice Marshall similarly observed:

However true the fact may be, that the tribunals of the states will administer justice as impartially as those of the nation, ... it is not less true, that the constitution itself either entertains apprehensions on this subject, or views with such indulgence the possible fears and apprehensions of suitors, that it has established national tribunals for the decision of controversies between ... citizens of different states.

*Bank of the U.S. v. Deveaux,* 9 U.S. (5 Cranch) 61, 87, 3 L.Ed. 38 (1809).

Defense counsel's summation in the case at bar amply demonstrates that these fears, though expressed some two hundred years ago, unfortunately retain validity, at least insofar as they are based on the belief that some attorneys may attempt to bring improper influences to bear upon a jury. There is no doubt whatever that appeals to the regional bias of a jury are completely out of place in a federal courtroom. Appeals tending to create feelings of hostility against out-of-state parties are so plainly repugnant that the Supreme Court long ago stated their condemnation "require[d] no comment." *New York Central R.R. Co. v. Johnson,* 279 U.S. 310, 319, 49 S.Ct. 300, 304, 73 L.Ed. 706 (1929). This sort of argument improperly distracts the jury from its sworn duty to hand down a just verdict based on the evidence presented to it. *See Westbrook v. General Tire and Rubber Co.,* 754 F.2d 1233, 1238 (5th Cir.1985) (error to overrule objection to counsel's us-against-them plea in products liability case against non-resident manufacturer).

Further, the bounds of counsel's advocacy are circumscribed by considerations of the prejudice it might engender. *See, e.g., Schwartz v. Northwest Airlines, Inc.,* 275 F.2d 846 (2d Cir.1960) (per curiam) (counsel has latitude for advocacy so long as prejudice does not appear); *Hall v. Freese,* 735 F.2d 956, 960 (5th Cir.1984) (defense counsel emphasized that plaintiff came from New Orleans (big city, far away) to Oxford, Mississippi (small hometown) for trial); *City of Cleveland v. Peter Kiewit Sons' Co.,* 624 F.2d 749, 755 (6th Cir.1980) (new trial ordered because counsel for city ar-

gued to jury that plaintiff was large international corporation from New Jersey seeking damages against City of Cleveland of which jurors were taxpayers); *Smith v. Travelers Ins. Co.*, 438 F.2d 373, 375 (6th Cir.) (references to appellant's residence in another state "obviously designed to prejudice jurors"), *cert. denied*, 404 U.S. 832, 92 S.Ct. 79, 30 L.Ed.2d 62 (1971). These limits are defined not only by case law, but by that fundamental sense of fairness which guides our system of justice, and by the rules governing the ethical conduct of attorneys. *See* Model Code of Professional Responsibility DR 7–106(C)(1) (1980); Model Rules of Professional Conduct Rule 3.4(e) (1983).

Obviously not all misconduct of counsel taints a verdict to such a degree as to warrant a new trial. *See Matthews v. CTI Container Transp. Int'l Inc.*, 871 F.2d 270, 278 (2d Cir.1989). Some misconduct is *de minimis* in the context of the entire trial, and some is promptly dealt with by the trial court's rulings and curative instructions. Yet, when the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict, a new trial should be granted. 6A Moore's Federal Practice ¶ 59.08[2] (2d ed. 1991); 11 Wright & Miller, Federal Practice and Procedure § 2809 (1973); *Koufakis v. Carvel*, 425 F.2d 892, 904 (2d Cir.1970); *see also Minneapolis, St. Paul & Sault Ste. Marie R.R. Co. v. Moquin*, 283 U.S. 520, 521, 51 S.Ct. 501, 502, 75 L.Ed. 1243 (1931) (in action under Federal Employers' Liability Act, verdict influenced by appeals to passion and prejudice set aside).

We recognize the trial court's superior vantage point when evaluating the possible impact of the alleged prejudicial conduct. A printed record is unable to replicate in full all the circumstances—for example, tones of voices, demeanor of witnesses and jurors and the like—that occur in the course of an unfolding trial. *See, e.g., Johnson v. Celotex Corp.*, 899 F.2d 1281, 1289 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990). Consequently, normally the district court's determination as to whether counsel's improper conduct caused prejudice is re-

viewed under the traditional abuse of discretion standard. *See, e.g., Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988).

Unique circumstances present in this case suggest that departure from the normal deference accorded a trial court is called for. It is one of the chief duties of a trial judge to run his or her courtroom in a way that assures litigants a fair and impartial trial. Part of that responsibility is the affirmative obligation to guard against improper trial tactics that might prevent a fair verdict. *Brown v. Walter*, 62 F.2d 798, 799–800 (2d Cir.1933) (Hand, J.). The trial court in the instant case overruled plaintiff's objection to defense counsel's argument that Pappas was not from the same state as the members of the jury. With the trial court's express approval, defense counsel then was permitted to continue commenting on regional differences between the plaintiff and the defendants, a wholly irrelevant argument, compounding the potential for prejudice.

The combination of the overruled objection, the absence of a curative instruction, and the giving of only the standard jury charge regarding arguments of counsel "could only have left [the jury] with the impression that they might properly be influenced by [the improper argument] in rendering their verdict, and thus its prejudicial effect was enhanced." *Johnson*, 279 U.S. at 318, 49 S.Ct. at 303. *See also Koufakis*, 425 F.2d at 901 (trial court has "responsibility to prevent counsel from continually making improper arguments").

Although in many cases where no new trial was ordered the frequency of biased or regional based comments exceeded those made in this case, the present case is distinct because the defense offered no proof, presented no witnesses and contented itself with a very brief summation that covered only a little over five pages of the transcript. *Compare Smith v. National R.R. Passenger Corp.*, 856 F.2d 467, 472 (2d Cir.1988) (two paragraphs of improper argument in 55–page summation not so prejudicial that reversal required). In such a context, we think the strong plea to region-

al bias stood out more starkly in the jurors' minds.

 In its post trial order the district court ruled the comments were not deliberately intended to elicit the jury's regional bias because defense counsel's argument regarding plaintiff's out-of-state status simply addressed defendants' point that plaintiff was not exhibiting the degree of care required in Vermont "concerning conditions that might be unfamiliar to one from another state." We think, on the contrary, that a Vermonter might be just as guilty of not exercising the requisite degree of care when walking on a slippery walkway as a person from New Jersey; the regional reference was wholly gratuitous and unnecessary to convey the concept of plaintiff's alleged contributory negligence. More importantly, the focus of appellate review in cases involving pleas to the regional bias of the jury is on whether potential prejudice exists, not on whether there was a second and proper purpose for the remark. Comments that improperly play to the sympathy of a jury may not be justified because of a tenuous substantive connection to a legal issue present in the case.

Defendants additionally urge the failure of the jury to reach the question of plaintiff's contributory negligence demonstrates that, even were the comments improper, they had no prejudicial effect on the verdict since they were made in the context of its contributory negligence argument. This contention must fail because the prejudice engendered by the improper comments may well have influenced the jury's verdict that defendants were not negligent. The context in which improper remarks are made does not limit the scope of their prejudicial impact.

We note that the district court judge did not himself express any regional animosity toward the plaintiff, nor did he refuse a request for an appropriate curative instruction. Nevertheless, an appeal to the jury's regional bias is so inherently improper as to raise the distinct possibility that regionalism infected the trial, and this danger is one a trial court could and should prevent either by sustaining an objection or giving a specific curative instruction. No verdict may stand when it is found in any degree to have been reached as a result of appeals to regional bias or other prejudice. *See Moquin,* 283 U.S. at 521, 51 S.Ct. at 502.

## CONCLUSION

The order of the district court denying plaintiff's motion for a new trial is reversed, the judgment in favor of defendants is vacated, and the case is remanded for a new trial consistent with this opinion.