872 P.2d 1247

**Darlene SHUCK and Troy Shuck, wife and husband, Plaintiffs–Appellants,**

v.

**TEXACO REFINING & MARKETING, INC., a Delaware corporation, Defendants–Appellees.**

No. 1 CA–CV 92–0149.

Court of Appeals of Arizona, Division 1, Department E.

April 21, 1994.

Margrave, Celmins & Verburg, P.C. by Lat J. Celmins, Scottsdale, for plaintiffs-appellants.

Jennings, Strouss & Salmon by Barry E. Lewin, Katherine M. Cooper, J. Matthew Powell, James M. Ackerman, Phoenix, for defendants-appellees.

## OPINION

NOYES, Judge.

Darlene and Troy Shuck appeal from a directed verdict granted to Texaco Refining and Marketing, Inc. in this slip-and-fall case. We conclude that the trial court erred in granting the directed verdict. We also conclude that the trial court abused its discretion by granting a motion in limine to preclude Troy Shuck from testifying about statements allegedly made to him by an unidentified Texaco employee.

### Facts and Procedural History

On April 12, 1991, the Shucks filed a complaint alleging that Texaco was liable for injuries Darlene Shuck suffered when she slipped and fell at a Texaco gas station/convenience market in Mesa. At trial, Darlene testified that around 6:15 p.m. on May 16, 1990, she stopped at the Texaco station to purchase gasoline. As Darlene was walking toward the store, she slipped and fell on an oil puddle just in front of the door. The spill had been covered with a blue paper towel. Darlene did not know the source of either the spill or the paper towel, nor did she know how long either had been there prior to her fall.

Kellee Rogers, a Texaco supervisor, testified that Texaco had a set procedure for handling oil spills. For small oil spills, a Texaco employee is supposed to sprinkle a substance called Dry Sweep on the spill, allow the Dry Sweep to absorb the oil, and then sweep up the substance and dispose of it. Rogers testified that placing a paper towel over a spill would be contrary to Texaco's procedure, that keeping Dry Sweep on the premises is "part of running the business," and that operating a gas station without the substance "wouldn't be too smart."

Kurt Dashney, the station's assistant manager on the day Darlene was injured, described the layout of the store and stated that the entire station is visible through a window near the cashiers' area inside the store. Dashney further testified that on May 16, 1990, he never personally inspected the station and that he never specifically instructed Romie Edge, the only other employee on duty when Darlene was injured, to do so. (For reasons not in the record, Edge did not testify at trial.)

Troy Shuck testified that he and Darlene returned to the station around 11:00 p.m. the night of her fall. At that time, Troy saw the "puddle," which he described as "a real slippery type substance." He noticed that the paper towel was gone and that the spill looked as though it had been cleaned up.

At the conclusion of the Shucks' evidence on liability, Texaco moved for a directed verdict and the court granted the motion. The Shucks filed a timely Notice of Appeal. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (Supp.1993).

### Directed Verdict

■ A directed verdict for the defendant should be granted only if the facts produced in support of the plaintiff's claim "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by [the plaintiff]." *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). We review the trial court's grant of directed verdict *de novo,* viewing the evidence in the light most favorable to the party opposing the motion. *See Fedie v. Travelodge Int'l, Inc.,* 162 Ariz. 263, 265, 782 P.2d 739, 741 (App.1989). Having conducted this review, we conclude that the Shucks presented evidence of sufficient probative value that the verdict should have been the product of a jury's deliberation rather than a trial court's direction.

■ The Shucks based their negligence claim in part upon a "mode-of-operation" theory. To prevail under a mode-of-operation theory, the plaintiff must establish that: (1)

the business reasonably could anticipate that the hazardous condition would occur on a regular basis, and (2) the business did not exercise reasonable care under the circumstances. *See Chiara v. Fry's Food Stores of Ariz., Inc.,* 152 Ariz. 398, 401, 733 P.2d 283, 286 (1987).

■ The testimony of both Dashney and Rogers indicates that oil spills regularly occurred at the station and that Texaco had established a uniform procedure for cleaning them up. Rogers testified that, as part of Texaco's general procedure, an employee is supposed to inspect the restrooms and lot every hour. If an employee sees a spill between inspections, he is supposed to clean it up immediately. Dashney testified that the entire station is visible through a window in the store and that on the day in question he: (1) did not personally inspect the premises, (2) did not instruct the other employee, Edge, to do so, (3) did not see Edge clean up an oil spill, and (4) could have seen (meaning "might actually have seen") the oil spill on which Darlene slipped.

This testimony, coupled with the visible location of the spill and the fact that someone had placed a paper towel over it, is sufficient to raise inferences from which a reasonable jury might conclude either that a Texaco employee found the spill and acted unreasonably by putting a paper towel over it rather than cleaning it up, or that a Texaco employee acted unreasonably by not finding an oil spill with a paper towel over it right where people walk into the store. The trial court therefore erred by granting Texaco's motion for directed verdict.

### Motion in Limine

Because the issue is likely to occur on remand, we address the Shucks' claim that the trial court erred by granting Texaco's motion in limine. The ruling precluded Troy from testifying about statements allegedly made to him by an unidentified Texaco employee ("the Texaco employee") at the store where Darlene was injured, a few hours after she was injured.[1] The Texaco employee,

---

1. Texaco argues that the Shucks did not "specifi- cally identify the declarant in this case." Prior

whom Troy understood to be "the manager or the person in charge," allegedly stated to Troy that paper towels were placed on the oil spill because the station was out of Dry Sweep that day. In its motion in limine, Texaco contended that these statements were inadmissible hearsay. In response, the Shucks contended that they were admissible under Rules 801(d)(2)(C), 801(d)(2)(D), and 804(b)(3), Arizona Rules of Evidence.

■ We will not disturb an evidentiary ruling absent an abuse of discretion resulting in prejudice. *See Selby v. Savard,* 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982). For the reasons discussed below, we conclude that Troy's proposed testimony was admissible under Rule 801(d)(2)(D) and that the plaintiffs were prejudiced by the preclusion of this testimony, which was very material to their negligence claim. *Cf. West Pinal Family Health Center, Inc. v. McBryde,* 162 Ariz. 546, 550, 785 P.2d 66, 70 (App.1989) (reversing the trial court's evidentiary ruling because the ruling was an incorrect application of the law). Because we conclude that the testimony was admissible under Rule 801(d)(2)(D), we do not discuss its admissibility on other grounds.

■ A statement offered against a party is not hearsay if it is made "by the party's agent or servant concerning a matter within the scope of the agency or employment, [and is] made during the existence of the relationship." Ariz.R.Evid. 801(d)(2)(D). Subsection (d)(2)(D) of Rule 801 is substantially broader than subsection (d)(2)(C), which allows the admission of a statement by an employee only if the employer authorized the employee to speak on the subject. *See* Morris K. Udall et al., *Law of Evidence* § 125, at 262 (3d ed. 1991). The proponent of evidence under Rule 801(d)(2)(D) must show only that the statement: (1) was made by the opposing

party's agent or servant, (2) was made during the existence of the relationship, and (3) concerned a matter within the scope of the agency or employment. *See Oki Am., Inc. v. Microtech Int'l, Inc.,* 872 F.2d 312, 314 (9th Cir.1989) (applying the federal equivalent of Rule 801(d)(2)(D)). Whereas the focus of Rule 801(d)(2)(C) is the employee's authority to make the statement, the focus of Rule 801(d)(2)(D) is the content of the statement and whether it relates to some aspect of the employer's business within the scope of the employee's activities. *See Pappas v. Middle Earth Condominium Ass'n,* 963 F.2d 534, 538 (2d Cir.1992) ("The authority granted in the agency relationship need not include authority to make damaging statements, but simply the authority to take action about which the statements relate."); *Hoptowit v. Ray,* 682 F.2d 1237, 1262 (9th Cir.1982); *cf.* Udall et al., *supra,* at 262–63.[2]

■ Under the three-prong test for admissibility under Rule 801(d)(2)(D), there must be independent proof of the agency relationship and its scope. *State v. Frustino,* 142 Ariz. 288, 294, 689 P.2d 547, 553 (App. 1984). However, the proponent of the evidence need not necessarily know the name of the declarant. *See Chaney v. Winn Dixie Stores, Inc.,* 605 So.2d 527, 529 (Fla.App. 1992) (applying the Florida equivalent of Rule 801(d)(2)(D)); *see also Pappas,* 963 F.2d at 538; *Davis v. Mobil Oil Exploration and Producing S.E., Inc.,* 864 F.2d 1171, 1174 (5th Cir.1989); *Platt v. Olympic Ice, Inc.,* 168 Ga.App. 299, 308 S.E.2d 704, 705 (1983). Nor is direct testimony required to prove the agency relationship. *Little v. Brown,* 40 Ariz. 206, 214, 11 P.2d 610, 613 (1932). Instead, the relationship "may be established from the circumstances, such as the relation of the parties to each other and

---

to trial, the Shucks served a notice of deposition requesting Texaco to produce witnesses who could reasonably testify, in part, to "[f]acts and events which took place on May 16, 1990 at [the station] and the incident involving Darlene Shuck and the subsequent meeting with Darlene and Troy Shuck on May 16, 1990." In response, Texaco failed to produce anyone who was on duty when the Texaco employee allegedly met with Troy.

2. Udall illustrates this distinction by noting that a statement by an employee-driver admitting fault would not qualify as an admission under Rule 801(d)(2)(C) (absent proof the driver had the authority to make the statement) but that the same statement is admissible under Rule 801(d)(2)(D) as an admission by both the driver and his employer. Udall et al., *supra,* at 262; *see also* 2 Kenneth S. Broun et al., *McCormick on Evidence* § 259, at 157–58 (John W. Strong ed., 4th ed. 1992).

to the subject matter, their acts and conduct." *Id.*; *see also Phoenix Western Holding Corp. v. Gleeson,* 18 Ariz.App. 60, 65–66, 500 P.2d 320, 325–26 (1972); *Pappas,* 963 F.2d at 538. Hearsay fitting within an exception also may be used to establish the agency relationship. *See Murphy Auto Parts Co. v. Ball,* 249 F.2d 508, 512 (D.C.Cir. 1957) (holding that the declarant's statement that he was on an errand for his employer was properly admitted as an excited utterance to prove that he was in fact engaged in his employer's business at the time of a collision with a pedestrian), *cert. denied,* 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415 (1958).

 The Advisory Committee Notes to Rule 801(d)(2)(D), Federal Rules of Evidence, which is substantively identical to the Arizona rule, provides that:

Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

(Citations omitted); *See also Pappas,* 963 F.2d at 537. Accordingly, Rule 801(d)(2)(D) does not require that the declarant have personal knowledge of the matter asserted in the statement. Udall et al., *supra,* at 255; 2 Kenneth S. Broun et al., *McCormick on Evidence* § 259, at 162 (John W. Strong ed., 4th ed. 1992). *But see* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 801(d)(2)(D)[01], at 801–298 (1993) (noting that Rule 801(d)(2)(D) does not contain an express requirement of personal knowledge but concluding that "such a requirement should be read into [the] rule as mandated by Rules 805 and 403"). Applying these principles to the facts of this case, we conclude

that the Shucks established the foundational requirements necessary for admission of the Texaco employee's statement under Rule 801(d)(2)(D). The credibility and weight to be given this evidence is for the jury to determine.

Our holding that the Texaco employee's statement qualifies as an admission under Rule 801(d)(2)(D) is consistent with the reasons for the rule's adoption. *See, e.g.,* 4 Weinstein & Berger, *supra,* at 801–281 (stating that Rule 801(d)(2)(D) grew out of dissatisfaction with the traditional "speaking authority" requirement because it "frequently caused courts to exclude an agent's highly probative statement on the theory that the principal had not authorized the agent to make damaging remarks about him"); Udall et al., *supra,* at 262 (noting that the traditional rule took "no account of the fact that an agent's statement is likely to be trustworthy"); 2 Broun et al., *supra,* at 158 ("Typically the agent is well informed about acts in the course of the business, the statements are offered against the employer's interest, and while the employment continues, the employee is not likely to make the statements unless they are true.").

Troy testified that he went to the Texaco station a few hours after Darlene had fallen and asked the cashier if he could speak to someone about filing a claim for Darlene's injuries. The cashier directed him to "a person in the back [of the store] who he said was the responsible manager on duty at that point." The person to whom Troy was directed then made certain statements to Troy. This evidence, when considered in light of its surrounding circumstances, is sufficient proof of agency to satisfy that foundational requirement of Rule 801(d)(2)(D). *Cf. Pappas,* 963 F.2d at 538 (holding that an agency relationship was sufficiently established when the district court made an express finding that the declarant, who arrived at a condominium with a shovel and a bucket after the occupants had called the management company to complain about an icy walkway, was an employee of the management company); *Davis,* 864 F.2d at 1174 (holding that sufficient evidence to establish an agency relationship was introduced when the proponent

of the admission testified that, although he did not know the declarant's name, the declarant was wearing a Mobil hard hat and two of proponent's co-workers testified that the declarant was "a Mobil company man"); *Chaney*, 605 So.2d at 529–30 (concluding that although the plaintiff in a slip-and-fall case did not know the name of the declarant, her testimony that the declarant wore a store name tag and "was in her checkout lane" was sufficient to establish an agency relationship); *Platt*, 308 S.E.2d at 705 (holding that, although the plaintiff could not identify the declarant by name, "the fact that the alleged agent was on the ice with [a] class and identified herself as the instructor, coupled with the manager's testimony that only employees . . . were authorized to be instructors, created a reasonable inference" that the declarant was an employee of the defendant).

The circumstances described by Troy, including the statements by the cashier, also create a reasonable inference that the unidentified Texaco employee's statement was made during the existence of his agency relationship with Texaco. Therefore, the only question remaining is whether the Texaco employee's statement concerned a matter within the scope of his employment. It did.

Rogers testified that all Texaco employees attend training classes where they are taught how to clean up small oil spills. As part of Texaco's procedure, the station manager assigns one person from each shift the responsibility of inspecting the premises every hour. Typically one or two people are on duty during a particular shift. In addition to the hourly checks, all Texaco employees are supposed to clean up any spills as soon as they are discovered. Dashney corroborated Roger's testimony and added that the "graveyard" shift, which is on duty from approximately 9:30 p.m. to 6:00 a.m., is responsible for the "major clean up at night." As an assistant manager, Dashney's duties were "to enforce and to make sure the people were doing their job."

This testimony provides sufficient circumstantial evidence to demonstrate that, whatever his title was, the scope of the Texaco employee's duties included cleaning and maintaining the station premises and that, therefore, his statement to Troy concerned a matter within the scope of his employment. *Cf. Pappas*, 963 F.2d at 538 (holding that "circumstantial evidence may establish the scope, as well as the existence, of the agency relationship"); 4 Weinstein & Berger, *supra*, at 801–289 to –295 (quoting Falknor, *Hearsay*, 1969 Law & Soc. Ord. 591, 601) ("[T]he authority to do an act would conclusively imply authority to speak narratively about the act, if the utterance was made before the termination of the agency.").

## Conclusion

The trial court erred by granting Texaco's motion for directed verdict. The statements allegedly made by the Texaco employee to Troy are admissible under Rule 801(d)(2)(D), and the trial court abused its discretion by precluding Troy from testifying to those statements. The judgment is reversed, and the case is remanded for a new trial.

JACOBSON, P.J., and FIDEL, J., concur.