NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MELBA RUCKER, *Plaintiff/Appellant,*

*v.*

QUIKTRIP CORPORATION, *Defendant/Appellee.*

No. 1 CA-CV 21-0550
FILED 7-5-2022

Appeal from the Superior Court in Maricopa County
No. CV2020-001900
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

COUNSEL

Zapata Law PLLC, Chandler
By Julio M. Zapata
*Co-Counsel for Plaintiff/Appellant*

Merchant Law Firm, PLLC, Phoenix
By Bimal R. Merchant
*Co-Counsel for Plaintiff/Appellant*

Burch & Cracchiolo, PA, Phoenix
By Theodore A. Julian, Jr., Daryl Manhart
*Counsel for Defendant/Appellee*

-----

## MEMORANDUM DECISION

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge D. Steven Williams and Chief Judge Kent E. Cattani joined.

-----

**B A I L E Y**, Judge:

**¶1**        Melba Rucker appeals the superior court's summary judgment in favor of QuikTrip Corporation ("QuikTrip") on her negligence claim.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Rucker slipped and fell in the parking lot of a QuikTrip store on a rainy day in February 2018.  She sued QuikTrip, alleging she slipped on an "oily substance" that QuikTrip either did not warn of or failed to promptly clean up.

**¶3**        QuikTrip moved for summary judgment, contending Rucker could not show any unreasonably dangerous condition existed or that QuikTrip had notice of any such condition.  Rucker opposed the motion and separately moved for sanctions, alleging that QuikTrip had only preserved one hour of video surveillance (that included the accident and time immediately preceding and following the accident) and had "destroyed surveillance video that would show [it] had notice of the oily parking spot hours before [she] slipped and fell."

**¶4**        The superior court granted QuikTrip's motion, finding that Rucker could not show QuikTrip had constructive notice of the alleged spill because "[t]here is no evidence . . . that shows how long the spill was there."  The court denied Rucker's sanctions motion as moot, finding that "[t]he missing video would not help and, at best, it impeaches the manager about the inspection of the parking lot."

**¶5**        Rucker timely appealed following the entry of final judgment. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes section 12-2101(A)(1).

**DISCUSSION**

I.      The Court Did Not Err in Granting Summary Judgment to QuikTrip.

**¶6**          We review *de novo* whether summary judgment is warranted, including whether genuine issues of material fact exist and whether the superior court properly applied the law. *Am. Furniture Warehouse Co. v. Town of Gilbert*, 245 Ariz. 156, 159, ¶ 9 (App. 2018). We view the evidence in the light most favorable to Rucker as the non-moving party. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460, ¶ 9 (2019). Summary judgment should be granted only "if the facts produced in support of [a] claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim." *Orme Sch. v. Reeves,* 166 Ariz. 301, 309 (1990).

**¶7**          Rucker was a business invitee to whom QuikTrip owed a duty of care. *See Stephens v. Bashas' Inc.*, 186 Ariz. 427, 430 (App. 1996). QuikTrip therefore was obligated to exercise reasonable care to make its premises safe for her use. *McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 252, ¶ 23 (App. 2013). Reasonable care "includes an obligation to discover and correct or warn of unreasonably dangerous conditions that the possessor of the premises should reasonably foresee might endanger an invitee." *Id.* (citations omitted).

**¶8**          The occurrence of a fall on business premises does not by itself establish negligence. *Contreras v. Walgreens Drug Store No. 3837*, 214 Ariz. 137, 138, ¶ 7 (App. 2006). Rucker instead must prove QuikTrip had notice of and did not reasonably respond to a dangerous condition. *Walker v. Montgomery Ward & Co.*, 20 Ariz. App. 255, 258 (1973). To establish notice, she must show

> 1) that the foreign substance or dangerous condition [wa]s the result of defendant's acts or the acts of his servants, or
>
> 2) that defendant had actual knowledge or notice of the existence of the foreign substance or dangerous condition, or
>
> 3) that the condition existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken action to remedy it (i.e., constructive notice).

*Id.* (citations omitted).

A. Rucker Did Not Show QuikTrip Had Constructive Notice.

**¶9** Rucker does not contend QuikTrip caused the spill. She instead contends summary judgment was improper because genuine issues of material fact remain as to whether QuikTrip had constructive notice of the spill. Specifically, she cites deposition testimony from QuikTrip's Arizona Rule of Civil Procedure ("Rule") 30(b)(6) designee to contend QuikTrip acknowledged (1) that vehicles sometimes leave behind liquids in parking spaces, (2) that it had specific cleaning products for oil and grease spots, and (3) that wet surfaces can create slippery conditions. None of these facts pertain to whether QuikTrip had constructive notice of this particular spill.

**¶10** Rucker contends QuikTrip's Rule 30(b)(6) designee, Kevin Bergman, admitted, or at least was willing to accept, that a vehicle leaked oil in the parking space at issue "sometime between 9 a.m. and noon." And although Bergman did not recall finding any oil in the parking space where Rucker fell during his inspection that day, there is evidence that a QuikTrip employee cleaned the area after Rucker fell and that QuikTrip blocked off the parking space the next day.

**¶11** QuikTrip notes, however, Rucker's testimony that she did not see any oil or grease on the ground before she fell and that she did not look down even though the ground was wet from the rain. Additionally, video footage still shots Rucker included in her motion for sanctions show the area of the fall but do not show any visible oil or grease spots.

**¶12** It is undisputed that Rucker fell at 12:09 p.m. As such, according to Rucker's only evidence of oil or grease on the ground (Bergman's potential testimony setting a range of time for a possible spill), the allegedly dangerous condition might have existed (if at all) for as little as ten minutes. And given Rucker's testimony that she did not see any spill on the ground, and the absence of visible oil or grease spots in the video footage, Bergman's testimony would at best lead to speculation by a jury as to how long a spill was there, something our supreme court rejected as improper in a similar slip-and-fall case involving a pebble on a stairway:

> The pebble could have been deposited ten seconds before the plaintiff fell, or ten minutes, or two hours and ten minutes. There is no evidence from which the jury could infer that one period of time was more reasonable than any other. Only if it had been there for a sufficient length of time for the defendant, in the exercise of reasonable care, to find and

remove it, could the defendant be found negligent. Submission of these facts to the jury would require the jury to guess whether the pebble had been on the stairway for a sufficient length of time. This cannot be permitted.

*McGuire v. Valley Nat'l Bank of Phoenix*, 94 Ariz. 50, 53-54 (1963). The superior court did not err in finding that Rucker's proposed evidence could not establish constructive notice.

### B. The Mode-of-Operation Rule Does Not Apply.

**¶13** Rucker also argues we should apply the "mode-of-operation rule," which can "relieve[ ] the plaintiff of the initial burden of proving notice in cases where the occurrence of a transitory hazardous condition can reasonably be anticipated from the store owner's method of doing business." *Bloom v. Fry's Food Stores, Inc.*, 130 Ariz. 447, 449 (App. 1981); *accord Contreras*, 214 Ariz. at 139, ¶ 8. The rule "looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident." *Chiara v. Fry's Food Stores of Ariz., Inc.*, 152 Ariz. 398, 400 (1987), *abrogated on other grounds by Orme Sch.*, 166 Ariz. at 305. To prevail, Rucker must show (1) QuikTrip reasonably could anticipate the hazardous condition would occur on a regular basis, and (2) QuikTrip did not exercise reasonable care under the circumstances. *See Shuck v. Texaco Refin. & Mktg., Inc.*, 178 Ariz. 295, 297 (App. 1994).

**¶14** Rucker presented evidence showing that QuikTrip knew customer vehicles sometimes leak in parking spaces and that, given the large number of customers who visit the store each day, leaks can frequently occur. But the frequency of oil leaks, standing alone, does not trigger the mode-of-operation rule. *See Contreras*, 214 Ariz. at 140, ¶ 12 ("[A]pplication of the mode-of-operation rule focuses not on whether a spill occurs at some interval, be it twice a week or twice a month, but on whether spills create a condition hazardous to customers with sufficient regularity to be considered customary, usual, or normal." (citation omitted)).

**¶15** Moreover, Rucker offered no evidence to show QuikTrip failed to take reasonable steps to mitigate any such risk. *See Shuck*, 178 Ariz. at 297. By way of comparison, in *Shuck*, the plaintiff contended she slipped and fell on an oil spot outside of a gas station and convenience store. *Id.* at 296. As in this case, evidence was presented to establish that the store "had a set procedure for handling oil spills." *Id.* But the *Shuck* plaintiff also presented evidence that the store did not follow that procedure; rather than clean up the spill, someone had placed a blue paper towel over it. *Id.* The

plaintiff also presented evidence that store employees had not followed general procedure and inspected the premises on the day of the fall. *Id.* at 297. Based in part on that evidence, the court reversed a directed verdict for the defendant and remanded for a new trial. *Id.* at 300.

¶16   Here, in contrast, there is no evidence to show QuikTrip deviated from its typical procedures for handling oil spills—or that those procedures were deficient or deviated from a more rigorous industry standard of care followed by other gas station operators. The undisputed record instead shows QuikTrip inspected the parking area in the morning on the day Rucker fell. And although Rucker contends QuikTrip "does not even recall whether the subject parking stall was actually cleaned . . . prior to the fall," Bergman testified he did not recall finding any oil spots during his inspection that morning. We therefore conclude that Rucker cannot prevail under the mode-of-operation rule.

II.  The Court Did Not Abuse Its Discretion in Finding No Spoliation.

¶17   Rucker also challenges the denial of her motion for sanctions for spoliation of evidence. "Spoliation is the destruction or material alteration of evidence." *Lips v. Scottsdale Healthcare Corp.*, 224 Ariz. 266, 267, ¶ 1 (2010). "[L]itigants have a duty to preserve evidence which they know, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *McMurtry*, 231 Ariz. at 260, ¶ 51 (quoting *Souza v. Fred Carries Contracts, Inc.*, 191 Ariz. 247, 250 (App. 1997)). We review spoliation rulings for an abuse of discretion. *See Souza*, 191 Ariz. at 249.

¶18   Citing *McMurtry*, Rucker contends "there is inherent prejudice in destruction of evidence that deprives a party of the best evidence on an issue." In *McMurtry*, a hotel guest fell to her death after climbing out of a third-story window. 231 Ariz. at 247-48, ¶¶ 2-3. The deceased victim's representative requested an adverse inference instruction based on the hotel's destruction of surveillance video footage from the evening of the fall. *Id.* at 248-49, ¶ 6. The court denied that request and subsequently granted summary judgment to the hotel. *Id.* at 249, ¶¶ 7, 9.

¶19   On appeal, the plaintiff contended the destroyed video would have "shown the obviousness of [the decedent's] intoxication" and argued the jury should have been "allowed to consider the loss of this key evidence and draw any inferences it chooses to draw from that loss." *Id.* at 259, ¶ 48. The record established that the hotel's computer system automatically

deleted surveillance video after approximately fourteen days, but (1) the hotel owners reviewed the video before it was deleted, and (2) they believed the police had made a complete copy of the video footage before it was deleted, which they had not. *Id.* at ¶ 49. Although we vacated summary judgment on other grounds, we remanded for further consideration of whether an adverse inference instruction was appropriate:

> As soon as [the hotel] learned of Lucario's death on the Hotel premises, the possibility of a lawsuit should have been apparent. And, because there was a strong likelihood of subsequent litigation and the footage would be relevant thereto, the Hotel had an obligation to take reasonable measures to preserve the recording. Moreover, the Hotel's belief that the entire recording was available through the police was wrong and was not verified by the Hotel.

*Id.* at 260, ¶ 52.

**¶20** This case differs from *McMurtry* in two important respects. First, QuikTrip preserved and disclosed one hour of surveillance video that included Rucker's entire visit to the store, her fall, and "store employees responding to the incident and [Rucker] driving away from the store." Second, as previously noted, the still shots Rucker included in her motion for sanctions confirm that an oil spot cannot be seen in the video footage. Indeed, she does not dispute QuikTrip's contention that "it is impossible to tell from the video if there was any oil or grease on the ground in the parking stall where [she] slipped." As such, any additional video would not have been probative as to when any spill occurred or whether QuikTrip had or should have had notice of it before Rucker fell.

**¶21** Rucker further contends the five factors identified in *Souza* merit an adverse inference instruction. Those factors are (1) whether the evidence was willfully or volitionally destroyed, (2) whether the case involves a failure to comply with a court order, (3) whether the opposing party had access to the destroyed evidence before its destruction, (4) the degree of prejudice resulting from the spoliation, and (5) whether the court considered the availability of less extreme sanctions before applying more extreme ones. 191 Ariz. at 250-52.

**¶22** The fifth factor does not apply because the court did not issue sanctions. The second and third factors are undisputed, as there was no pending court order regarding the video footage and Rucker had no access to the video before it was automatically deleted.

**¶23**    As to the first factor, Rucker contends QuikTrip knowingly and recklessly destroyed the additional video but presented no evidence to support this contention.  It appears Rucker did not request any additional video until March 2021, approximately three years after it had been automatically deleted.  And as to the fourth factor, and most importantly, as discussed above, there is no evidence to suggest the destroyed video would have shown when a spill (not visible as of the time of Rucker's fall) occurred or when QuikTrip had or should have had notice of it.  The superior court did not abuse its discretion by denying Rucker's motion for sanctions.

## CONCLUSION

**¶24**    For the foregoing reasons, we affirm.  QuikTrip may recover its taxable costs incurred in this appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA