Sharon E. **MACK** and David G. **Mack, Snr., Plaintiffs,**

v.

**METRO–NORTH COMMUTER RAIL-ROAD, John Herrlin, M.D. and Inez Vasquez, R.P.A., in their capacities as employees and individually, Defendants.**

No. 94 Civ. 2249 (PKL).

United States District Court, S.D. New York.

March 8, 1995.

Richard K. Bernard and Carol S. Barnett, Metro–North Commuter R. Co., New York City.

Campbell McC. Holder, Campbell Holder & Associates, New York City.

## MEMORANDUM ORDER

LEISURE, District Judge:

This is an action brought by Sharon E. Mack ("Sharon Mack") and David G. Mack, Snr. ("David Mack"), against Metro North Commuter Railroad, ("Metro–North"), John Herrlin, M.D. ("Herrlin"), and Inez Vasquez ("Vasquez"). Plaintiffs originally brought the instant action in state court, and defendants removed it to federal court. Sharon Mack seeks damages for negligence, assault, battery, and false imprisonment, allegedly arising out of a fitness-for-service medical examination conducted by defendants. David Mack asserts a claim for loss of consortium.

On July 8, 1994, defendants moved to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). Defendants allege that the complaint raises a "minor" dispute under the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.*, ("RLA"). They contend that it is therefore the type of dispute for which Congress vested exclusive jurisdiction to the RLA grievance-to-adjustment board dispute resolution procedure, established in section 3 of the RLA.

## BACKGROUND

 It is well established that, in considering a motion to dismiss for want of subject matter jurisdiction, the Court must accept as true all material factual allegations in the complaint. *See, e.g., Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992). It is also well established, however, that the Court should not draw argumentative inferences favorable to the party asserting jurisdiction. *Id.*

There are significant discrepancies as to the facts which gave rise to the complaint in this action. Viewing the facts in the light most favorable to the non-movant, as the Court must, they are as follows: On March 26, 1993, Sharon Mack was injured while working as a conductor. Plaintiffs' Brief in Answer to Defendants' Motion to Dismiss Plaintiffs' Complaint ("Plaintiffs' Mem.") at 1. Three days later, and contrary to company practice, Sharon Mack was instructed by Pete Hanson ("Hanson"), a trainmaster, to visit the Metro–North Medical Department. Plaintiffs' Mem. at 1. On March 29, 1993, Sharon Mack submitted to a physical examination by defendant Herrlin, a medical doctor employed by Metro–North. Plaintiffs' Mem. at 1. During the examination, Herrlin conducted a vigorous manipulation of Sharon Mack's neck, which aggravated the neck injury she received three days earlier. Plaintiffs' Mem. at 1–2. In pain, she demanded that Herrlin stop the examination. Plaintiffs' Mem. at 2. He ignored her, and plaintiff then attempted to terminate the examination by leaving the room. Plaintiffs' Mem. at 2. While Herrlin was conducting the examination, his assistant, Vasquez, conducted a search of Sharon Mack's handbag, and when Sharon Mack attempted to leave, Vasquez tackled her and hit her in the face. Plaintiffs' Mem. at 2. When Sharon Mack called for help Vasquez immediately covered Sharon Mack's mouth with her hand to stifle her screams. Plaintiffs' Mem. at 2. The examination exacerbated the neck injury from which Sharon Mack suffered, and Vasquez's attack left her with contusions and swelling of the face and neck. Plaintiffs' Mem. at 3.

Based on reports of the incident given by Vasquez and Herrlin, Metro–North took disciplinary action against Sharon Mack. Plaintiffs' Mem. at 3. On June 10, 1993, subsequent to an investigation regarding the incident, Metro–North dismissed Sharon Mack. Plaintiffs' Mem. at 3.

Plaintiffs assert that their tort claims are not pre-empted by the RLA and therefore that the motion to dismiss should be denied. Defendants counter that, as a minor dispute under the RLA, the grievance-to-adjustment board has exclusive jurisdiction. The question before this Court, therefore, is whether plaintiffs have pleaded facts sufficient to establish that their claims are not pre-empted by the grievance to adjustment board dispute resolution procedure. For the reasons stated below, defendants' motion to dismiss is denied as to the first four claims in the complaint and is granted as to the 5th and 6th claims.

## DISCUSSION

### I. *The Collective Bargaining Agreement*

 While providing both "for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions" and "for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," the RLA's dispute resolution procedures do not necessarily pre-empt all state law claims. 45 U.S.C. § 151a. *See Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1034 (2d Cir.1993). The RLA establishes compulsory arbitral procedures to handle minor disputes and dictates that these disputes be resolved by the National Railroad Adjustment Board. *See Consolidated Rail v. Ry. Labor Executives' Ass'n,* 491 U.S. 299, 303–304, 109 S.Ct. 2477, 2480–2481, 105 L.Ed.2d 250 (1989). In the instant action, there are issues of fact as to whether plaintiffs' first four claims are "minor" under the RLA, and consequently involve interpretation of the collective bargaining agreement ("CBA"). Until such issues are resolved, a dismissal for lack of subject matter jurisdiction of those claims is inappropriate. However, plaintiffs' fifth and sixth causes of action do require interpretation of the CBA. Therefore, they are subject to the dispute resolution procedure of the RLA and not to the jurisdiction of this Court.

In *Consolidated Rail,* the Court held that a "dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement." *Consolidated Rail,* 491 U.S. at 307, 109 S.Ct. at 2482; *see also Hawaiian Airlines, Inc. v. Norris,* — U.S. ——, ——, 114 S.Ct. 2239, 2246, 129 L.Ed.2d 203 (1994) (holding that a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the collective bargaining agreement). The alleged manner in which Herrlin and Vasquez conducted the medical examination is not an issue "grounded in the collective-bargaining agreement." *Hawaiian Airlines,* 114 S.Ct. at 2245. Additionally, the rights of plaintiffs to bring state law tort claims exist independent of the CBA.

Plaintiffs have not attempted to circumvent the RLA by couching in terms of tort law issues grounded in the CBA. *See, e.g. Magnuson v. Burlington Northern,* 576 F.2d 1367, 1369 (9th Cir.1978) (in an action involving a claim for intentional infliction of emotional distress, which developed from an alleged conspiracy to terminate, the court held that "[a]rtful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge"). In the instant action, Sharon Mack's first four claims are neither based on wrongful discharge nor on any issues which necessarily entail the interpretation of the CBA. They are tort claims which arose from a medical examination. Plaintiffs' Mem. at 2–3.

 While the propriety of the decision to require the medical examination may be subject to the CBA, this is not necessarily true of the conduct during that examination. *Cf. Calvert v. Trans World Airlines, Inc.,* 959 F.2d 698, 700 (8th Cir.1992) (where issue was whether the airline subjected pilot to medical examination for purpose of intimidating him, the court held the dispute to be minor because the CBA specifically addressed the airline's right to require medical exams); Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint ("Defendants' Mem.") at 10. The issue in the first four claims in the present case is not whether Metro–North wrongly subjected Sharon Mack to a medical examination, but rather whether Herrlin and Vasquez committed intentional torts in the course of that examination. Plaintiffs' Mem. at 3.

It may be true, as defendants assert, that Sharon Mack was subject to a "fitness-for-duty" medical examination under the terms of the CBA. Defendants' Reply Memorandum of Law in further Support of their Motion to Dismiss the Complaint ("Defendants' Reply Mem.") at 2. But it does not necessarily follow that the conduct of that examination "squarely implicates and requires interpretation of the collective bargaining agreement covering Sharon Mack's employment with Metro–North." Defendants' Reply Mem. at 2. The CBA does not mention the conduct of a doctor during an examination.

Additionally, while defendants claim that all of plaintiffs' causes of action relate to the disciplinary proceedings regarding Sharon Mack's discharge, this Court does not find support for that claim in the papers submitted. Sharon Mack's complaint does not challenge the finding of the disciplinary committee regarding her discharge. While she presents a version of the events that took place at the medical examination different from the one that the disciplinary committee found to be true, and upon which it decided to discharge her, she has not challenged the findings of that body in this Court. Plaintiffs' Mem. at 9–10. This Court is not asked to determine whether Sharon Mack was disciplined correctly, but rather whether she was tortiously injured.

In sum, plaintiffs' first four claims do not "depend upon" nor are they "rooted in" the meaning of the CBA. *See Hawaiian Airlines,* —— U.S. at ——, 114 S.Ct. at 2247. If plaintiffs' factual allegations are true, under no interpretation of the CBA is the behavior in question permissible. In other words, claims one through four seemingly turn on a "purely factual inquiry" about conduct and motive that do not require interpretation of the CBA. *See Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988). Accordingly, the Court concludes that plaintiffs' first four causes of action are not pre-empted by the RLA.

■ The fifth cause of action for exposing plaintiff to the events in question is essentially a claim for wrongfully submitting plaintiff to the medical exam. The ability of Metro–North to require plaintiff to submit to the exam is covered by the CBA and therefore is pre-empted by the RLA. *Calvert,* 959 F.2d at 700. The sixth cause of action for negligently failing to ensure that the medical facility was manned by adequately trained employees and for failing to take disciplinary action against defendants is likewise a claim involving an issue which is "substantially dependent upon analysis of the terms of an agreement made between the parties," and is pre-empted by the RLA. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985).

## II. FELA

■ In a footnote on the last page of their brief, defendants claim that Sharon Mack's "remedy. [sic] if any, lies in an action under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 *et seq.*" The Federal Employers' Liability Act ("FELA") provides a remedy for employees injured due to the negligence of federal employers engaged in interstate commerce. 45 U.S.C. § 51. FELA does not cover Sharon Mack's claims against Herrlin and Vasquez individually, and FELA does not generally cover intentional torts unless they are reasonably foreseeable or the tort was committed in furtherance of the employer's business. *See Lancaster v. Norfolk and Western Ry. Co.,* 773 F.2d 807, 817 (7th Cir.1985). The Second Circuit has held that a railroad is not liable for personal injuries resulting from intentional torts under·FELA, unless the harm is of the type which would be reasonably foreseeable by the railroad and thus avoidable by them. *Cf. Smith v. Nat'l R.R. Passenger Corp.,* 856 F.2d 467, 469–470 (2d Cir.1988); *Green v. River Terminal Ry.* 763 F.2d 805, 808–809 (6th Cir.1985). Issues of fact remain as to whether these actions were foreseeable or committed in furtherance of the goals of Metro–North, and therefore a dismissal on this ground is likewise not warranted at this time.

Consequently, it is likely that Sharon Mack would not be compensated sufficiently by FELA. As FELA was enacted to compensate injured railroad employees fully, it would not serve Congressional intent to dismiss Sharon Mack's state law claims because of pre-emption by a statute which may not remedy those claims. *See Smith,* 856 F.2d at 473; *see also Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 144 (2d Cir.1989) (stating that the "purpose of Congress is the ultimate touchstone in determining whether a federal law preempts a state law"); *see also Rogers v. Consol. Rail Corp.,* 948 F.2d 858, 860 (2d Cir.1991) (when a railroad employee was injured outside the territorial limits of the United States, where FELA would not provide compensation, the Second Circuit stated that to hold that FELA pre-empted state law

claims would leave plaintiff without a remedy—a holding which would contravene Congress' intent).

Finally, even if this Court were later to determine that FELA pre-empted some of Sharon Mack's claims, leave to amend to plead the claims under FELA would likely be granted.

### III. *Outrageous Conduct*

 In *Farmer v. United Brotherhood of Carpenters & Joiners,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the Supreme Court created a narrow exception to federal pre-emption. The Supreme Court established that in the labor law context, if a cause of action (1) is only a peripheral concern of labor law, and (2) affects historical state interests in protecting the health and well-being of its citizens, it is exempted from preemption. *Farmer,* 430 U.S. at 304–305, 97 S.Ct. at 1065–1066. The Supreme Court held that "[n]othing in the federal labor statutes protects or immunizes from state action violence or the threat of violence in a labor dispute." *Farmer,* 430 U.S. at 299, 97 S.Ct. at 1063. The *Farmer* Court further held that, "the particularly abusive manner in which the [tort] is accomplished . . ." is the key to determining if an exception is warranted. *Farmer,* 430 U.S. at 305, 97 S.Ct. at 1066. In the instant action, the allegations of the purported attack and false imprisonment of Sharon Mack are not primarily related to the CBA and are within the historic concerns of the state in protecting the health and welfare of its citizens. Therefore, the allegations in claims one through four of the complaint sufficiently satisfy the test of outrageous conduct to merit a denial of the motion to dismiss.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss this action for lack of subject matter jurisdiction is denied as to claims one through four of the complaint and is granted as to the fifth and sixth claims. The parties are advised to appear in Courtroom

1106 for a pre-trial conference at 2:00 p.m. on April 21, 1995.

**SO ORDERED.**