352 F.3d 599
 NEW ENGLAND INSURANCE COMPANY, Plaintiff-Appellant,
v.
HEALTHCARE UNDERWRITERS MUTUAL INSURANCE COMPANY, formerly known as Hospital Underwriters Mutual Insurance Company, Hospital Underwriters Mutual Insurance Company, Defendants-Appellees.
 Docket No. 02-9315.
 United States Court of Appeals, Second Circuit.
 Argued: August 6, 2003.
 Decided: December 15, 2003.
 
 Evan H. Krinick, Rivkin Radler LLP (Michael P. Versichelli, of counsel), Uniondale, NY, for Appellant.
 Barbara D. Goldberg, Mauro Goldberg & Lilling, LLP (Kenneth Mauro, of counsel), Great Neck, NY, for Appellees.
 Before: POOLER, SACK, and WESLEY, Circuit Judges.
 SACK, Circuit Judge.
 
 
 1
 This case stems from an incident of medical malpractice in 1982, which resulted in a $2.4 million New York state-court jury verdict against a hospital located in New York State and a settlement of the claim against the hospital for $2.1 million in 1993. As the primary carrier for the hospital, defendant-appellee Healthcare Underwriters Mutual Insurance Company ("HUM") paid $1 million (its policy limit) of the settlement, and, as the excess carrier, plaintiff-appellant New England Insurance Company ("New England") paid the remaining $1.1 million. New England then brought a diversity suit in the United States District Court for the Eastern District of New York against HUM for its alleged bad-faith refusal to settle the claim prior to litigation. New England prevailed before the jury, but the district court granted HUM's post-verdict motion for judgment as a matter of law ("JMOL"). On appeal, we reversed, instructing the district court "to enter judgment in favor of New England in accordance with the jury's verdict." New England Ins. Co. v. Healthcare Underwriters Mutual Ins. Co., 295 F.3d 232, 249 (2d Cir.2002) ("New England I"). When reinstating the verdict on remand, the district court (Arthur D. Spatt, Judge) concluded that a footnote in our opinion, which ordered the defendant to pay interest at the New York State rate for the period between the time of the federal jury verdict and the JMOL, and interest at the federal rate thereafter, precluded the district court from awarding interest for the more than seven-year period between the state-court malpractice litigation and the federal jury verdict. Because the issue of the proper award of interest for the period preceding the federal jury verdict was not within the compass of our mandate,[1] and because New York State law compels the award of such interest, we conclude that the district court erred in so limiting the interest award. We therefore vacate the judgment of the district court and remand for the court to grant the plaintiff, in addition to the jury award and post-JMOL interest, an appropriate award of interest for the period preceding the federal JMOL under New York State law.
 
 BACKGROUND
 
 2
 The facts underlying this appeal, which are undisputed, are set forth in some detail in our earlier opinion in this case, New England I, on which we rely for the following summary of the facts pertinent to this appeal.
 
 
 The Parties
 
 
 3
 HUM is a New York corporation that served as the primary insurer for Huntington Hospital (the "hospital") at the time of the malpractice suit underlying this insurance dispute. HUM's policy limit was $1 million.
 
 
 4
 New England is a corporation organized under the laws of Connecticut with its principal place of business in Massachusetts. New England was the excess carrier for the hospital. Its policy limit was $3 million.
 
 
 The Underlying Medical Malpractice Action
 
 
 5
 In 1982, David Weinstock was born at the hospital. He suffered severe and permanent brain damage as a result of insufficient oxygen during the course of his birth. In 1984, his parents brought a medical malpractice suit in New York State Supreme Court, Suffolk County, against the attending obstetrician and the hospital. In 1991, the Weinstocks settled with the obstetrician for $1.2 million.
 
 
 6
 HUM, which controlled the litigation for the hospital, rejected settlement offers from the Weinstocks ranging from $500,000 to $4 million. Although New England repeatedly attempted to convince HUM that it had a duty to settle the case, HUM made no settlement offer to the Weinstocks before or during the trial. On September 1, 1992, the jury rendered a verdict in favor of the Weinstocks in the amount of $9.6 million, 25% of which ($2.4 million) was attributed to the hospital. On April 14, 1993, the parties settled the case for $2.1 million, of which HUM paid $1 million (its policy limit) and New England paid the remaining $1.1 million.
 
 
 The Bad-Faith Action in Federal Court
 
 
 7
 On March 23, 1998, New England brought a diversity suit against HUM in the United States District Court for the Eastern District of New York seeking $1.1 million plus interest based on HUM's alleged bad-faith refusal to settle. On December 20, 2000, a jury rendered a $1.1 million verdict for New England. New England argued that it was also entitled to interest at the New York State rate of 9% from and after September 1, 1992, the date of the jury verdict in the underlying malpractice action. HUM did not question New England's right to 9% interest from "the earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. 5001(b), but argued that that date was April 14, 1993, the date of the settlement agreement in the state-court malpractice action.
 
 
 8
 After denying multiple pre- and post-verdict motions for JMOL brought by HUM under Fed.R.Civ.P. 50, on June 26, 2001, the district court granted HUM's second post-verdict JMOL motion. In a written decision, the court overruled both the jury verdict in favor of New England and three of the court's own prior rulings.
 
 This Court's First Decision: New England I
 
 9
 On appeal, we reversed the district court's JMOL in favor of HUM and remanded the case to the district court, ordering it to reinstate the jury verdict in favor of New England. New England I, 295 F.3d at 249. The last of thirty footnotes, at the end of our opinion, read:
 
 
 10
 The district court is instructed to award to New England prejudgment interest at the New York State rate of 9% from December 20, 2000 (the date of the [federal] jury verdict) to June 29, 2001 (the date of the [federal] judgment in favor of Healthcare). The district court is instructed to award postjudgment interest at the federal rate thereafter.
 
 
 11
 Id. at 249 n. 30.
 
 
 The Remand
 
 
 12
 On remand, New England sought, in addition to the interest we had ordered, interest from September 1, 1992, (the date of the jury verdict in the state court that gave rise to the bad-faith claim in the federal court) to December 20, 2000 (the date of the district court jury verdict), for substantially the reasons New England had previously presented to the district court. HUM then argued for the first time that the "law of the case" doctrine required that interest for the period preceding the JMOL should be calculated only from December 20, 2000, to June 29, 2001, the dates specified in footnote 30 of our opinion in New England I — a total of $51,805.48. In response, New England asserted that the footnote did not address the issue of interest for the time before the date of the jury verdict in the federal suit — December 20, 2000 — and therefore did not control that aspect of the district court's decision.
 
 
 13
 On October 15, 2002, the district court agreed with HUM, entering judgment for New England in the amount of $1.1 million with postjudgment interest running from the date of the JMOL. With regard to prejudgment interest, the court granted New England only $51,805.47, the interest accumulated at 9% between December 20, 2000 (the date of the jury verdict in the federal bad-faith action), and June 29, 2001 (the date of the district court's JMOL overruling that verdict), with no interest for the period between the state-court jury verdict or settlement and the federal-court jury verdict. The court issued a written order explaining that it considered the interest award to be dictated by footnote 30.
 
 
 14
 New England appeals.
 
 DISCUSSION
 I. Standard of Review
 
 15
 The award of interest is generally within the discretion of the district court and will not be overturned on appeal absent an abuse of that discretion. With regard to preverdict interest determinations, however, New York law does not permit the trial court to exercise any discretion where a party is entitled to such interest as a matter of right.
 
 
 16
 Indu Craft, Inc. v. Bank of Baroda, 87 F.3d 614, 617 (2d Cir.) (internal citations and quotation marks omitted), cert. denied, 519 U.S. 1041, 117 S.Ct. 609, 136 L.Ed.2d 535 (1996). New York law provides that a "prevailing party" is entitled to preverdict interest as a matter of right on most types of claims, including contract claims. Id. (discussing N.Y. C.P.L.R. 5001).
 
 
 17
 II. The Scope of the Mandate in New England I
 
 
 A. The Claims of the Parties
 
 
 18
 Agreeing with the district court, HUM argues that our footnote 30 precluded the district court from awarding interest to New England for any time before December 20, 2000 (the date of the jury verdict in the federal insurance bad-faith action). According to HUM, footnote 30, by ordering interest after December 20, 2000, implicitly directed the district court to award no interest between the time of the state-court action that gave rise to the federal litigation and the date of the federal jury verdict. Thus, HUM contends, New England's only routes to obtaining interest for the period before the jury verdict in the federal suit were a petition for rehearing, a motion to recalculate interest, or a motion to recall the mandate. Otherwise, HUM asserts, the district court's hands were bound on remand by the law of the case.
 
 
 19
 New England contends that our footnote 30 is irrelevant to the question whether HUM must pay interest for the period between the underlying state malpractice action and the jury verdict in this federal lawsuit. New England asserts that New York law mandates an award of preverdict interest in these circumstances "from the earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. 5001(b), an assertion that HUM did not contest before the district court prior to its first appeal.[2] Moreover, New England notes that the parties' briefs to us in New England I did not address the question of the appropriate award of interest in the event that we reinstated the jury verdict in favor of New England, as we ultimately did. According to New England, footnote 30 pertains only to the proper rates of interest for the time period following the federal jury verdict and says nothing about the propriety of interest in the seven or eight years before — after the verdict and settlement in the underlying state malpractice suit.
 
 
 20
 HUM argues in response that the question of pre-federal-verdict interest was properly considered by this Court in New England I because Federal Rule of Appellate Procedure 37(b) required us to rule on it.
 
 
 B. Rule 37
 
 Rule 37 provides:
 Interest on Judgment
 
 21
 (a) When the Court Affirms. Unless the law provides otherwise, if a money judgment in a civil case is affirmed [by a court of appeals], whatever interest is allowed by law is payable from the date when the district court's judgment was entered.
 
 
 22
 (b) When the Court Reverses. If the court [of appeals] modifies or reverses a judgment with a direction that a money judgment be entered in the district court, the mandate must contain instructions about the allowance of interest.
 
 
 23
 Fed. R.App. P. 37. The rule was created in response to the decision of the United States Supreme Court in Briggs v. Pennsylvania Railroad Co., 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948).
 
 
 24
 By way of background, in Briggs v. Pennsylvania Railroad Co., 153 F.2d 841 (2d Cir.1946), we reversed a district court's entry of judgment notwithstanding the verdict and ordered the district court to enter judgment on the jury verdict. Briggs, 334 U.S. at 305, 68 S.Ct. 1039. In the course of doing so, we did not mention whether, let alone from what date, interest should be awarded for the period subsequent to the verdict. Id. On remand, the district court awarded judgment on the verdict plus interest from the date of the verdict. Id. On a second appeal, we then modified the judgment to exclude the interest. Briggs v. Pennsylvania R.R. Co., 164 F.2d 21, 23 (2d Cir.1947). The Supreme Court affirmed on the basis that "the interest was in excess of the terms of the mandate" in the first appeal because that mandate was silent as to interest. Briggs, 334 U.S. at 306, 68 S.Ct. 1039. Thus, Briggs addressed only the issue whether interest was proper for the period between the date of a jury verdict (or a judgment notwithstanding that verdict) and the date of a judgment entering that verdict after the court of appeals reverses the district court's judgment notwithstanding the verdict and orders the verdict reinstated.
 
 
 25
 In light of the scope of Briggs and the apparent purpose of Rule 37(b), we read the rule to speak solely to the matter of post-federal-verdict interest. An advisory committee note explains Rule 37(b) and Briggs as addressing that issue:
 
 
 26
 In reversing or modifying the judgment of the district court, the court of appeals may direct the entry of a money judgment, as, for example, when the court of appeals reverses a judgment notwithstanding the verdict and directs entry of judgment on the verdict. In such a case the question may arise as to whether interest is to run from the date of entry of the judgment directed by the court of appeals or from the date on which the judgment would have been entered in the district court except for the erroneous ruling corrected on appeal. In Briggs v. Pennsylvania R. Co., 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), the Court held that where the mandate of the court of appeals directed entry of judgment upon a verdict but made no mention of interest from the date of the verdict to the date of the entry of the judgment directed by the mandate, the district court was powerless to add such interest. The second sentence of the proposed rule is a reminder to the court, the clerk and counsel of the Briggs rule. Since the rule directs that the matter of interest be disposed of by the mandate, in cases where interest is simply overlooked, a party who conceives himself entitled to interest from a date other than the date of entry of judgment in accordance with the mandate should be entitled to seek recall of the mandate for determination of the question.
 
 
 27
 Fed. R.App. P. 37 advisory committee's note. The implication of the commentary is clear: The rule speaks only to postverdict interest "from the date of the verdict to the date of the entry of the judgment directed by the [court of appeals's] mandate" and "from a date other than the date of entry of judgment." Id. (emphasis added).
 
 
 28
 The rule reflects a sensible division of labor between the district courts and the courts of appeals. The district court assesses, at least in the first instance, the propriety of interest for the time up to and including the proceedings before it, with which it ordinarily has superior familiarity. But when the scene of the litigation shifts from the district court to the court of appeals, and a final resolution of the case in favor of the winner of a jury award is postponed because of the pendency of proceedings there, the court of appeals is ordinarily in the best position to determine where the equities lie between the winning party and the losing party, and whether the winning party must or ought to be paid for the losing party's use in the interim of what turns out to be the winning party's money.
 
 
 29
 It is thus clear that footnote 30 of New England I, rendered pursuant to Rule 37, addressed, as it said that it did, only interest subsequent to the federal jury verdict on the bad-faith claim. It did not address interest that accrued on New England's malpractice settlement amount between the 1992-1993 state court proceedings, out of which New England's cause of action arose, and the date of the federal jury verdict.
 
 
 30
 To be sure, footnote 30 may have overshot its mark. The Supreme Court has, since Briggs, made clear that the plain language of the federal postjudgment interest statute, 28 U.S.C. § 1961 ("Such interest shall be calculated from the date of the entry of the judgment ...." (emphasis added)), requires the starting date for calculation of federal interest to be the date of entry of the JMOL, not the date of the jury verdict or the date the court imagines the jury verdict would have been entered but for the delay caused by the defendant's motion for JMOL. Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990); see also Magee v. U.S. Lines, Inc., 976 F.2d 821, 823 (2d Cir.1992). As we anticipated in Smith v. National Railroad Passenger Corp., 856 F.2d 467 (2d Cir.1988):
 
 
 31
 Fed. R.App. P. 37 was adopted specifically to address the question whether, under 28 U.S.C. § 1961, "when the court of appeals reverses a judgment notwithstanding the verdict and directs entry of judgment on the verdict ... interest is to run from the date of entry of the judgment directed by the court of appeals or from the date on which the judgment would have been entered in the district court except for the erroneous ruling corrected on appeal."
 
 
 32
 Id. at 472-73 (quoting Fed. R.App. P. 37 advisory committee's note (omission in original));[3] see also Kotsopoulos v. Asturia Shipping Co., S.A., 467 F.2d 91, 95 (2d Cir.1972) (applying Rule 37 to postjudgment interest).[4] Thus, perhaps footnote 30 should have limited itself to the award of interest after June 26, 2001, the date of the JMOL entered by the district court, and not addressed the question of interest for the time period between the date of the verdict, December 20, 2000, and the date of the judgment.[5]
 
 
 33
 In any event, whether footnote 30 should have covered the entire post-federal-verdict period or only that after the JMOL, we did not say or imply that interest called for by New York law should not have been awarded for the period before the federal jury verdict. It would have been neither correct nor proper for us to have done so.
 
 
 34
 As already noted, "[u]nder New York law, `prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract.'" Graham v. James, 144 F.3d 229, 239 (2d Cir.1998) (quoting Adams v. Lindblad Travel, Inc., 730 F.2d 89, 93 (2d Cir.1984)). N.Y. C.P.L.R. 5001(a) makes such interest mandatory: "interest shall be recovered...." Id. (emphasis added). New York appears to classify suits against insurance carriers for bad-faith refusals to settle such as the one before us as contractual in nature. See Roldan v. Allstate Ins. Co., 149 A.D.2d 20, 544 N.Y.S.2d 359, 366 (N.Y.App.Div.1989) (holding action for bad-faith refusal to settle governed by New York's statute of limitations for contract actions). By reading our footnote 30 to prohibit pre-federal-verdict interest in this case, then, the district court was construing the footnote as an instruction to ignore the applicable dictates of New York law.
 
 
 35
 HUM is right, of course, that the district court had no authority to depart from the mandate of this Court. See, e.g., Briggs, 334 U.S. at 306, 68 S.Ct. 1039; In re Ivan F. Boesky Securities Litig., 957 F.2d 65, 69 (2d Cir.1992). But a mandate is controlling only "as to matters within its compass...." Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); see also Banco Nacional de Cuba v. Farr, 383 F.2d 166, 178 (2d Cir.1967) (declining to extend the Supreme Court mandate rule to cover situations in which an intervening statute changes the law after the Supreme Court issues its mandate, but noting that "[o]f course [the mandate rule] does not apply to matters left open by the mandate" (citing Sprague)), cert. denied, 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed.2d 1151 (1968). "Put simply, the law of the case `does not extend to issues an appellate court did not address.'" Moore v. Anderson, 222 F.3d 280, 284 (7th Cir.2000) (quoting Luckey v. Miller, 929 F.2d 618, 621 (11th Cir.1991)). The mandate did not cover pre-federal-verdict interest.
 
 
 36
 The mandate did, of course, cover interest for the period between the federal jury verdict and the entry of JMOL by the district court. As we have discussed, it probably should not have done so, but its instruction regarding that interval, as part of the mandate, was correctly followed by the district court. This instruction was in accordance with New York law and neither party questions it on appeal. It therefore remains in force.
 
 
 C. HUM's Equitable Subrogation Argument
 
 
 37
 On appeal, for the first time, HUM offers the remarkable theory that footnote 30 "implicit[ly]" "determined that this was an action where interest from the date of the underlying verdict was not required as a matter of substantive New York law." Appellee's Br. at 16. HUM argues that this "implicit" ruling was correct because "[t]he instant action is... of an equitable nature," specifically "equitable subrogation,"[6] and "accordingly the Court, in the exercise of its discretion, could properly award pre-judgment interest from the date of the verdict in favor of New England, and not from the date of the verdict or the settlement in the underlying Weinstock action." Appellee's Br. at 16-17. C.P.L.R. 5001(a) provides for mandatory prejudgment interest for breach-of-contract judgments, but does make prejudgment interest discretionary in actions of an equitable nature.[7] HUM's argument fails, however, for at least two reasons.
 
 
 38
 First, Under New York law, a primary insurer's duty of good faith is owed to excess insurance carriers as well as to the insured. See, e.g., Cont'l Cas. Co. v. Pullman, Comley, Bradley & Reeves, 929 F.2d 103, 106-07 (2d Cir.1991); Pavia v. State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 452, 626 N.E.2d 24, 27, 605 N.Y.S.2d 208, 211 (1993); St. Paul Fire & Marine Ins. Co. v. U.S. Fidelity & Guar. Co., 43 N.Y.2d 977, 979, 375 N.E.2d 733, 734, 404 N.Y.S.2d 552, 553 (1978). New England's action against HUM was therefore plainly a direct one based on that duty. We have found nothing in the record to suggest otherwise. The argument that our brief footnote, discussing no particular theory of recovery, reflects a decision on our part that New England somehow prevailed on the unnecessary, far-fetched theory of equitable subrogation instead is entirely unpersuasive.
 
 
 39
 Second, when arguing its case before the district court prior to our decision in New England I, HUM conceded New England's claim to prejudgment interest from the time of the underlying judgment. As we have noted, the parties had a modest disagreement in that court as to such interest, but the dispute was not about whether interest was due, only about the date on which interest began to run. It is implausible in the extreme that we would have taken it upon ourselves on appeal to deny to the plaintiff, by way of footnote, seven or eight years of preverdict interest on an equitable subrogation theory that had not been argued to us.
 
 CONCLUSION
 
 40
 For the foregoing reasons, we vacate the judgment of the district court with respect to interest on the judgment prior to the federal jury verdict and remand for redetermination of interest to include that period, and such other proceedings, if any, as may be required and consistent with New England I and this opinion.
 
 
 
 Notes:
 
 
 [1]
 "The mandate consists of a certified copy of the appellate court's judgment, a copy of the opinion, and any direction as to costs."United States v. Reyes, 49 F.3d 63, 66 (2d Cir.1995) (footnote omitted) (citing Fed. R.App. P. 41(a)).
 
 
 [2]
 In the district court, prior toNew England I, the parties agreed that New England was entitled to interest from the "earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. 5001(b), and they agreed that that date was either in 1992 or 1993. As noted above, New England argued that it was entitled to interest from the date of the verdict in the underlying malpractice action, September 1, 1992, whereas HUM contended to the district court that New England should receive interest only from the date of the settlement agreement in the underlying malpractice action, April 14, 1993. In their arguments before the district court prior to our first ruling in this case, then, the parties agreed that the plaintiff was entitled to interest from April 14, 1993, at the latest, if the plaintiff prevailed on the merits. Because these issues were not relevant once the district court declined to enter judgment on the jury verdict and instead granted judgment as a matter of law to HUM, they were not raised on appeal to this Court in New England I.
 
 
 [3]
 We concluded in Smith that Rule 37 gave "appellate courts discretion to decide the issue [of when postjudgment interest begins] on a case-by-case basis." 856 F.2d at 473
 
 
 [4]
 Despite having recognized that one purpose of Rule 37(b) is to remind parties and courts of theBriggs decision, see Reaves v. Ole Man River Towing, Inc., 761 F.2d 1111, 1112 (5th Cir.1985), the Fifth Circuit has, without explanation, applied Rule 37 to prejudgment interest as well as postjudgment interest, Canal Ins. Co. v. First General Ins. Co., 901 F.2d 45, 46 (5th Cir.1990). For the reasons stated above, we decline to read the rule in this way.
 
 
 [5]
 Although footnote 30 appears to beright as a matter of state law that interest accrued at the New York State rate of interest between December 20, 2000, and June 26, 2001, see Indu Craft, 87 F.3d at 617 (suggesting that payment of prejudgment interest in this diversity case is mandatory under N.Y. C.P.L.R. 5001), the question does not appear to have been before us in New England I under 28 U.S.C. § 1961 and Rule 37(b).
 
 
 [6]
 Subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor."Black's Law Dictionary 1440 (7th ed. 1999).
 
 
 [7]
 The statute provides:
 (a) Actions in which recoverable. Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.
 N.Y. C.P.L.R. 5001(a).