**Bernt ULLMAN Plaintiff,**

v.

**STARBUCKS CORPORATION d/b/a Starbucks Coffee Company, Defendant.**

**No. 99 CIV 0421 RCC.**

United States District Court, S.D. New York.

March 29, 2001.

Brian M. Moskowitz, Fink & Moskowitz, L.L.P., Brooklyn, NY, for Plaintiff.

George N. Tompkins, III, Schnader Harrison Segal & Lewis LLP, New York City, for Defendant.

## OPINION AND ORDER

CASEY, District Judge.

Plaintiff Bernt Ullman ("Plaintiff") brought this personal injury action against Defendant Starbucks Corporation ("Defendant"), alleging psychological injuries with physical consequences, in connection with an incident where Plaintiff alleges that Defendant served Plaintiff a drink that contained ground up pieces of glass. Plaintiff alleged that he ingested some of the glass, causing injuries. The trial on this matter began on April 10, 2000 and concluded on April 12, 2000. On April 12, 2000, the jury returned a verdict for Defendant, finding that Plaintiff did not suffer any injury as a result of Defendant's actions. Plaintiff now brings before the Court motions pursuant to Rules 59 and 61 of the Federal Rules of Civil Procedure to vacate the judgment entered, to set aside the jury's no damages verdict, and for a new trial, arguing that the jury's verdict was tainted and Plaintiff was denied a fair trial.

In support of his motion, Plaintiff submitted no memorandum of law whatsoever. The only submission offered in support of the motions is the affirmation of Gary S. Mayerson (the "Affirmation"), co-counsel on the case. The Affirmation makes no reference to the transcript or to relevant case law. Through this Affirmation, Plaintiff argues that he should be granted a new trial because during the trial, the Court allegedly "directly and indirectly communicated to the jury its apparent disdain for [P]laintiff, the merits of [P]laintiff's case, [P]laintiff's psychologist, and [P]laintiff's counsel, and then unduly 'suggested' and thus tainted the verdict ultimately reached by the jury" by, *inter alia*,

making disparaging remarks about Plaintiff's counsel; engaging in challenging body language, including scowling and shaking his head; reinforcing defense points during Plaintiff's counsel's questioning of witnesses; suggesting to the jury that Plaintiff's case bore no relation to reality; and acting in a hostile way towards Plaintiff and Plaintiff's psychologist. Affirmation ¶ 3(a). Plaintiff also argues that the Court failed to mitigate or investigate any potential harm resulting from Defendant's counsel's alleged use of what Plaintiff refers to as the "facially prejudicial epithet 'witch doctor' within audible range of the jury during the critical testimony of plaintiff's psychologist." *Id.* ¶ 3(b). Plaintiff moved for a mistrial on the second day of trial, arguing essentially the exact same points, and the Court, after hearing argument, denied the motion in its entirety. Trial Transcript ("Tr.") at 181–188.

■ Rule 59 of the Federal Rules of Civil Procedure ("Rule 59") provides, in pertinent part, that

[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

Fed. R. Civ. Proc. 59(a). Rule 59 should be read in conjunction with Rule 61 of the Federal Rules of Civil Procedure ("Rule 61"), which provides, in substance, that a court may grant a new trial, set aside a verdict, or vacate, modify or otherwise disturb a judgment or order if the refusal to take such action is inconsistent with substantial justice. *See* Fed. R. Civ. Proc. 61. Rule 61 goes on to caution that "[t]he court at every stage of the proceeding must disregard any error or defect in the pro-

ceeding which does not affect the substantial justice of the parties." *Id.* A motion for a new trial may be granted even if the court finds that there was substantial evidence to support the jury's verdict. *Bevevino v. Saydjari,* 574 F.2d 676, 683 (2d Cir.1978).

■■ The judge reviewing the motion "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *Id.* at 684. Here, the Court was the trial Court that heard the case, therefore, it sits in the "unique position to assess the credibility of the witnesses and to determine the weight which should be accorded their testimony." *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992). However, the Second Circuit has held that a "jury's credibility assessments are entitled to deference," *United States v. Landau,* 155 F.3d 93, 105 (2d Cir.1998), therefore, in the normal course, a trial court should not be inclined to disturb a jury's verdict. *Ricciuti v. New York City Transit Authority,* 70 F.Supp.2d 300, 305–08. These principles of deference to the jury may be overridden where "the court is convinced that the jury has reached a seriously erroneous result, or that the verdict is against the weight of the evidence, making its enforcement a miscarriage of justice." *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988); *Sharkey v. Lasmo,* 55 F.Supp.2d 279, 289 (July 7, 1999) (citing *Bevevino,* 574 F.2d at 684).

■■ The aim of Rule 59 is a narrow one, intended to permit a court to rectify its own mistakes immediately following the entry of judgment. *See Greene v. Town of Blooming Grove,* 935 F.2d 507, 512 (2d Cir.1991) (citing *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 450, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982)). The unsuccessful party's disagreement with the court's decisions or conclusion is

insufficient to obtain relief under Rule 59. *Farr Man Coffee, Inc. v. Chester,* 1993 WL 328854, *1 (S.D.N.Y. Aug. 26, 1993) (citation omitted).

■■ Furthermore, the standard for a new trial based on judicial misconduct is extremely high, and the moving party must demonstrate that "the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." *Duckett v. Godinez,* 67 F.3d 734, 740 (9th Cir.1995). To determine whether there was judicial bias, a court should "examine the entire record and attempt to determine whether the conduct of the trial has been such that the jurors have been impressed with the trial judge's partiality to one side to the point that this has become a factor in the determination of the jury." *United States v. Guglielmini,* 384 F.2d 602, 605 (2d Cir. 1967).

■ Here, Plaintiff has failed to meet the standard for relief under Rule 59. Without a single citation to the trial transcript or to relevant case law, Plaintiff argues that the Court's conduct during the trial deprived Plaintiff of a fair trial. The Court has examined each allegation, and finds nothing to suggest that the Court's action or inaction affected the substantial justice of the parties so as to amount to a miscarriage of justice. *See Visalli v. Grasso,* 1999 WL 605703, *2–3 (W.D.N.Y. July 29, 1999); *Bevevino,* 574 F.2d at 684.

■ On the second day of the trial, Plaintiff's counsel moved for a mistrial, which motion the Court denied in its entirety. *See* Trial Tr. at 181–88. As a preliminary matter, a Rule 59 motion "may not be employed to relitigate already-decided matters." *Farr Man Coffee, Inc. v. Chester,* 1993 WL 328854, *1 (S.D.N.Y. Aug. 26, 1993) (citations omitted). Here, Plaintiff's motion for a new trial, to set

aside the jury's no damages verdict, and to vacate the judgment entered is based essentially on the same set of allegations as the previously-decided motion for a mistrial. Plaintiff certainly is entitled to make his motion, and the Court has carefully examined all of the issues raised. However, the content of Plaintiff's submission is disturbing to the Court. The lack of legal authority and citations to the record in Plaintiff's motions is matched by their lack of substance. Accordingly, the Court has gone through the process of attempting to glean some legal argument from Plaintiff's submission in support of his motion.

### Questioning witnesses

■■■ "A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition." *United States v. Scholl,* 166 F.3d 964, 977 (9th cir), *cert. denied,* 528 U.S. 873, 120 S.Ct. 176, 145 L.Ed.2d 149 (1999) (citation omitted). Indeed, a federal judge has broad discretion in supervising trials. *United States v. Laurins,* 857 F.2d 529, 537 (9th Cir.1988) (finding no actual bias when the trial judge frequently limited cross-examination and verbally demonstrated his dissatisfaction with defense counsel).

■■■ Plaintiff argues, without citing to the record, that the Court made "disparaging remarks about [P]laintiff's counsel in the presence of the jury." Affirmation ¶ 3(i). Plaintiff also does not cite any law supporting the conclusion that this type of action on the part of the trial judge, even assuming it occurred, would warrant a new trial. This conclusory allegation is clearly insufficient to demonstrate prejudice amounting to a miscarriage of justice.

■■■ Plaintiff also argues, again, without citing to the record, that the Court reinforced points of testimony elicited by defendant's counsel and virtually never engaged in the same type of reinforcing conduct during the presentation of evidence by plaintiff's counsel. *Id.* ¶ 3(a)(iii). The Court has searched the record and has reviewed the Court's questions challenged by Plaintiff, relating to the "one sip" that Plaintiff took of the Starbucks's coffee drink.[1]

During that line of questioning, Plaintiff stated "I did cut my mouth, but later I was much more concerned about what I had swallowed." The Court questioned, "What you had swallowed was only one sip from the straw, correct?" Plaintiff responded, "Yes, one." The Court questioned, "One sip?" The Plaintiff responded, "Big sip." The Court questioned, "Big, but one?" The Plaintiff responded, "Yes." Tr. at 75, lines 10–18. The Court had no further questions on this issue. Plaintiff indicated that he was concerned about what he has swallowed, thus, the purpose of the Court's questioning was to clarify the quantity that Plaintiff swallowed, as his physical injuries, if any, were at issue in the case. Initially, Plaintiff did not answer the Court's question directly, thus requiring follow up questions. This line of questioning did not occur during direct, cross, or redirect examination, but rather, after both sides concluded their questioning. Further, defense counsel never elicited the "one sip" point in his cross examination of Plaintiff. Therefore, the Court was not "reinforcing" the points of either side,

---

1. The Court notes that all of Plaintiff's allegations regarding the Court's questioning of witnesses involve Plaintiff's witnesses. This is not an indication of bias on the part of the Court, rather it is because Defendant did not call any witnesses, and introduced no evidence other than two depositions, which were read into the record.

rather, it was clarifying the facts for the jury.

The Court addressed its decision to question certain witnesses when ruling on Plaintiff's motion for a mistrial, stating, outside the presence of the jury, that "[t]he jury is entitled to a clear presentation. Perhaps if your co-counsel was more artful in asking his questions, it would require less clarification." *Id.* at 185, lines 16–18. In reviewing the transcript, the Court reaffirms that statement.

■ Plaintiff also argues that the Court "unduly suggest[ed] to the jury, through the [C]ourt's questioning of [P]laintiff's psychologist, that [P]laintiff's claim for damages had no relationship to 'reality,'" Affirmation ¶ 3(a)(iv). Again, Plaintiff cites neither from the record nor to any legal authority. The line of questioning to which Plaintiff refers involved criteria used to determine whether a patient has post-traumatic stress disorder. Tr. at 148, lines 16–17. Plaintiff's psychologist explained that the first criteria involved a determination of whether "the person experienced, witnessed, or was confronted with, an event or events that involved actual or threatened death or serious injury or threat to the physical integrity of the self or others." *Id.* at 152, lines 2–5. In response to Plaintiff's counsel's question as to whether and how Plaintiff satisfied that criteria, the witness answered "he truly believed that he had— the body was being contaminated by pieces of glass that could not be detected by the medical tests given at the time." *Id.*, lines 9–11. At this point, Plaintiff's attorney asked the witness to move on to the second criteria. The Court interjected "just one second. On that criteria, if he believed it, he satisfied the criteria? Even if it was based on no reality whatsoever, he still qualified for that criteria?" *Id.*, lines 13–16. After a series of questions,

the Court asked, "So he qualifies or not?" The witness responded in the affirmative, and the Court followed up by asking "Will you explain what you mean by that?" *Id.* at 153, lines 10–12. Here, the Court's questioning merely sought to elicit from the expert witness whether the first criteria was satisfied based solely on the Plaintiff's belief, whether or not such belief was reasonable or had any basis in reality. The jury was entitled to a clear explanation of the basis on which Plaintiff's expert based his decision, particularly considering the fact that no corroborative evidence of actual physical injuries was introduced by Plaintiff. Even assuming *arguendo* that these questions had the effect suggesting that the psychologist's testimony was incomplete, this would not result in a miscarriage of justice so as to warrant a new trial. *See United States v. Whatley,* 2000 WL 760042, *1 (9th Cir.2000).

The Court's comments, alluded to but not cited by Plaintiff, were not evidence of partiality or bias. Rather, they were nothing more that the Court's attempts to ensure the smooth running of the trial and the complete development of the facts for the jury's consideration. Additionally, the Court instructed the jury that nothing the Court said should be taken as indicating its views on the merits of the case. Specifically, the Court charged the jury that "this is an important case. Every case is a[n] important case. Handle it as an important matter. Decide it solely on the evidence and the law as I have charged it to you." Trial Tr. at 342, lines 8–11.

The Court has reviewed the record and holds that the Court's questioning of witnesses was in an attempt to ensure the clear and orderly presentation of evidence to the jury, and, taken as a whole, the record does not show actual or implied bias on the part of the Court.

### Failure to Mitigate Harm

 Plaintiff alleges that the defense attorney uttered the "inflammatory epithet 'witch doctor,'" under his breath, which Plaintiff argues was "encouraged by the Court's seemingly hostile and suggestive treatment of [P]laintiff's psychologist." Affirmation ¶ 6. As a preliminary matter, there is no reflection in the transcript that such phrase was ever uttered. The Court stated on the record that it "never heard the 'witch doctor,' and I think you are just assuming that this was criticism of some doctor, and nobody could prove it one way or the other, but I never heard it, so I am going to deny it on that motion." Tr. at 183, lines 21–24. Even assuming Defendant's counsel did make the alleged statement, "not all misconduct of counsel taints a verdict to such a degree as to warrant a new trial." *Pappas v. Middle Earth Condominium Ass'n.*, 963 F.2d 534, 540 (2d Cir.1992) (citation omitted). The court has broad discretion in determining whether a counsel's conduct is unduly prejudicial and whether there is a reasonable probability that the jury's verdict was influenced by any improper conduct of counsel. *Strobl v. New York Mercantile Exchange*, 582 F.Supp. 770, 780 (S.D.N.Y.), *aff'd*, 768 F.2d 22 (2d Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985); *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir.1978). Some misconduct is minor, and may be addressed adequately by a court's instructions to the jury. *See Pappas*, 963 F.2d at 540.

 With respect to this allegation, Plaintiff has presented no argument that, assuming the defense attorney said anything that could be construed as similar to the allegation, he used the "facially prejudicial epithet 'witch doctor'" rather than asked the question "which doctor?"

There is no reasonable probability that the jury's verdict was influenced in any way by the alleged statement of defense counsel, and any effect such a statement, if made, would have had was addressed properly in the Court's instructions to the jury, advising the jury that "[w]hat the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is not evidence." Tr. at 330, lines 15–17. Because the Court as did not hear the alleged statement, because any such statement does not appear in the record, and because, even assuming the defense attorney did make such a statement, the Court addressed attorney statements and the weight to be given to them in his instructions to the jury, this allegation does not warrant a new trial, vacating the judgment entered, or setting aside of the jury's no damages verdict.

### "Challenging" Body Language

 Lastly, Plaintiff argues that "what appeared to be challenging and otherwise communicative 'body language' by the Court during the testimony of [P]laintiff's witnesses which included, but was not limited to, scowling coupled with side to side head shaking" was prejudicial. Affirmation ¶ 7. First, such an allegation is clearly not sufficient to meet the high standard of Rule 59 to warrant a new trial. Second, to hold that such alleged conduct is sufficient to warrant a new trial under Rule 59 would lead to an unworkable, subjective standard of courtroom observation, primarily by interested parties. The Court wonders how many unsuccessful parties would bring motions for a new trial arguing, with or without basis, judicial bias based on such unprovable allegations of "communicative body language" which, itself, is subject to differing interpretations. Lastly, even assuming *arguendo* that the Court did engage in "challenging body language," the Court specifically informed the jury, prior to the introduction of any evi-

dence and prior, even, to counsel's opening arguments, that "[n]othing the court may say or do during the course of the trial is intended to indicate, nor should it be taken by you, as indicating what your verdict should be." Tr. at 4, lines 23–25; 5, line 1. The Court further charged the jury that nothing the Court "may have said during the trial or may say during these instructions with respect to a factual matter [is] to be taken in substitution for your own independent recollection. What I say is not evidence." Tr. at 330, lines 21–24.

The Court has examined the entire record and determines that any alleged partiality on the part of the trial judge could not reasonably have become a factor in the determination of the jury. *Guglielmini*, 384 F.2d at 605. There was no miscarriage of justice in the trial of this case. Plaintiff was unsuccessful on the merits, and now seeks a second bite at the apple. The Court finds no merit whatsoever in Plaintiff's allegations and is seriously concerned that counsel would bring before the Court a motion that includes no support in the law and no citation to. the record.

### Conclusion

For all of the reasons stated above, Plaintiff's motion for a new trial, to vacate the judgment, and to set aside the jury's verdict are DENIED WITH PREJUDICE in their entirety.