Annette D. MEISELMAN, Plaintiff,

v.

Police Officer Eric BYROM, individually and as a police officer of the Nassau County, New York Police Department, and County of Nassau, Defendants.

No. 99 CV 3585.

United States District Court,
E.D. New York.

June 28, 2002.

Arthur V. Grasek, Islip Terrace, NY, for Plaintiff.

Annette Meiselman, Great Neck, NY, pro se.

Lorna Goodman, Nassau County Attorney's Office, by Liora M. Ben–Sorek, Deputy County Attorney, Mineola, NY, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On June 24, 1999, the plaintiff, Annette Meiselman ("Meiselman" or the "plaintiff") commenced this action by filing a complaint in which she raised two claims pursuant to 42 U.S.C. § 1983 ("Section 1983"): excessive force and an unreasonable search. In particular, Meiselman claimed that on September 18, 1997, when Police Officer Eric Byrom ("Byrom") arrested her for driving with a suspended license, he used excessive force in that he placed and kept handcuffs on her that were too tight. Meiselman also alleged that when she asked Byrom to loosen the handcuffs, he tightened them further. In addition, Meiselman alleged that she was subjected to an unreasonable search in that following her arrest, she was strip searched by a woman in Byrom's presence and in an area in which he was able to view the search.

Jury selection was held on April 1, 2002, and the trial commenced on April 23, 2002. Following seven days of trial, two charges were submitted to the jury: (1) Section 1983 excessive force; and (2) Section 1983 unreasonable search. On May 2, 2002, the jury returned a verdict in favor of the defendants on both causes of action.

Throughout the trial, Meiselman was represented by counsel. Following the verdict, Meiselman discharged her attorney and advised the Court that she is now proceeding *pro se*. Presently before the Court are two motions by the plaintiff. Both motions request that the Court vacate the judgment and order a new trial pursuant to Rules 59, 60, and 61 of the Federal Rules of Civil Procedure ("Fed. R.Civ.P.").

Meiselman's handwritten papers are almost unintelligible and raise a number of allegations regarding everything from the Court's evidentiary rulings to a government conspiracy to harass the plaintiff. This decision reviews only those allegations that the Court deems pertinent to the plaintiffs' motions and does not address her irrelevant assertions, such as the allegation that her ex-husband and the father of former President William J. Clinton were both adulterers and bigamists; the government conspiracy to harass the plaintiff; defense counsel's religious beliefs; Byrom's location on September 11, 2001; the plaintiff's familial, marital, and financial problems; and her claims that after the conclusion of the trial, two jurors, Byrom, and Byrom's wife have been following her. Instead, the Court addresses the plaintiff's four relevant arguments: (1) the defendants' evidence was altered, and a witness testified falsely; (2) her attorney's conduct was improper; (3) defense counsel's arguments and conduct were improper; (4) the Court made erroneous evidentiary decisions, and (5) the Court should have recused itself.

At the outset, the Court is mindful that Meiselman's *pro se* status means that her submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe,*

449 U.S. 5, 9, 101 S.Ct. ·173, 176, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *see also Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir. 1993). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of her lack of legal training. *See Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Indeed, courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Traguth,* 710 F.2d at 95 (quoting *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981)).

Rule 59 of the Fed.R.Civ.P. provides, in pertinent part, that

> [a] new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed.R.Civ.P. 59(a). Rule 60 provides that a court may relieve a party from a final judgment due to, among other things, "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; [or] (3) fraud." Fed.R.Civ.P. 60. Rule 61 provides that errors in the "admission or exclusion of evidence" and errors or defects "in any ruling or order or in anything done or omitted by the court or by any of the parties" are not grounds for granting a new trial or for setting aside a verdict "unless refusal to take such action appears to the court inconsistent with substantial justice." Fed.R.Civ.P. 61. Rule 61 further states that "at every stage of the proceeding [the court] must disregard any error or defect in the proceeding which does not affect substantial justice." *Id.*

■ "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Atkins v. New York City,* 143 F.3d 100, 102 (2d Cir.1998). Indeed, the court should only grant a new trial "when the jury's verdict is 'egregious.'" *DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 133 (2d Cir.1998) (quoting *Dunlap–McCuller v. Riese Org.,* 980 F.2d 153, 158 (2d Cir.1992)). In deciding a motion for a new trial, the court may weigh the evidence and is not bound to view it in the light most favorable to the non-moving party. *See DLC Management,* 163 F.3d at 133; *United States v. Landau,* 155 F.3d 93, 104 (2d Cir.1998); *Bevevino,* 574 F.2d at 684. However, the "jury's credibility determinations are entitled to deference." *Landau,* 155 F.3d at 105. In addition, if the moving party's argument is simply a disagreement with the court's decisions or conclusions, that party is not entitled to relief under Rule 59. *See Ullman v. Starbucks Corp.,* 152 F.Supp.2d 322, 326 (S.D.N.Y.2001) (citing *Farr Man Coffee, Inc. v. Chester,* 1993 WL 328854, *1 (S.D.N.Y. Aug.26, 1993)). Therefore, a trial court generally should not be inclined to disturb a jury's verdict. *See Ricciuti v. New York City Transit Authority,* 70 F.Supp.2d 300, 305–08 (S.D.N.Y.1999).

Applying these standards to the facts of this case, the Court finds that the plaintiff has not demonstrated that the verdict constitutes either a seriously erroneous result or a miscarriage of justice. Meiselman's first argument pertains to the au-

thenticity of the evidence and the truthfulness of the testimony of Police Officer Crystal Jones. In particular, the plaintiff claims that the defendants altered documents and "touched up" the videotape which were entered into evidence. She also argues that Officer Jones testified falsely by stating that she was a "matron" in the jail when she actually was a police officer. Meiselman does not describe which documents were altered or how the videotaped was changed. Rather, she simply accuses defense counsel of tampering with the evidence submitted to the jury. These conclusory allegations are insufficient to support a motion for a new trial. Furthermore, the Court did not observe that any of the evidence contained "changes" or was "touched-up". In addition, Officer Jones was subject to cross-examination by plaintiff's counsel, and the Court declines to substitute its own credibility determinations for those of the jury, which are accorded great deference. *See Landau*, 155 F.3d at 105. Accordingly, the plaintiff's motion for a new trial based on altered evidence and false testimony is denied.

█ The plaintiff also argues that she is entitled to a new trial on the ground that her attorney was "sluggish", quiet, unorganized, and fell asleep during closing arguments. Plaintiff's counsel, an outstanding and experienced civil rights attorney, has appeared before this Court many times, and, as in the past, he litigated this case zealously. After jury selection, during which counsel raised a *Batson* challenge, he presented a detailed opening argument that succinctly outlined his theory of the plaintiff's case. In the plaintiff's case, counsel called nine witnesses to the stand and introduced approximately 28 exhibits into evidence. In addition, he conducted thorough cross examinations of the defendants' nine witnesses and re-called the plaintiff in his rebuttal case. Plaintiff's counsel raised appropriate objections and put forth sound legal arguments throughout the trial. Further, he presented a cogent closing argument to the jury. If counsel's manner of speaking is slow or quiet, that is his technique and style and have no bearing on his ability to effectively present the plaintiff's case, which he did. Assuming that his files are not organized in the usual manner, that lack of organization did not interfere with his ability to litigate this case to the extent that the law and the facts would allow. This Court has observed that Mr. Grasek has his own method of trial organization in that he has an index-card system. Contrary to the plaintiff's bald assertion, the Court did not observe her attorney falling asleep during closing arguments or at any other time. As such, the Court concludes that the conduct and manner of plaintiff's counsel did not result in a verdict that is a miscarriage of justice.

The plaintiff next argues for a new trial on the ground that the conduct of defense counsel as well as her arguments were improper. In particular, the plaintiff claims that defense counsel's statements that Meiselman was not a doctor were slanderous. The plaintiff also argues that defense counsel's closing argument was not based on the evidence presented, and that her statements were baseless generalizations. Meiselman further asserts that defense counsel used "cheap dramatic shots with little winks to the jury." In addition, the plaintiff claims that defense counsel spoke too quickly, brainwashed the jury, presented repetitious testimony, ran across the room, threatened and scared the plaintiff's witnesses, badgered witnesses, answered questions that should have been answered by the witness, was disrespectful and rude, and invaded the plaintiff's privacy.

Defense counsel has also appeared before this court on prior occasions. Throughout all of her appearances, including the present one, defense counsel has been courteous and respectful of the Court, the litigants · and the witnesses. Further, in this case, defense counsel did not elicit repetitious testimony, or badger witnesses. Assuming that defense counsel answered questions that should have been answered by the witness, the Court finds any such conduct to be completely harmless. The Court did not observe defense counsel threaten or scare the plaintiff's witnesses, nor has the plaintiff submitted any details regarding those alleged threats. The Court declines to grant the plaintiff a new trial based on these conclusory and unproven assertions.

■ While defense counsel may have spoken too quickly at certain times during the trial, on occasion, most lawyers and witnesses who appear before this Court speak too quickly, and the Court instructs them to speak more slowly. The Court heard and understood counsel's questions and arguments and, therefore, finds that the speed of defense counsel's speech did not result in an egregious verdict.

■ Unlike the plaintiff, the Court did not observe defense counsel "wink" at the jury, run across the courtroom, or use cheap theatrics when refuting the plaintiff's case. Further, to the extent that defense counsel injected some drama into her presentation, such techniques are usual and did not render the verdict a miscarriage of justice. Assuming that defense counsel argued that Meiselman was not a doctor, the Court finds that such an argument was made in good faith and, thus, was entirely proper.

The Court also finds that the plaintiff's challenges to defense counsel's closing argument are without merit. First, the plaintiff fails to identify any specific assertions that were not based on the evidence. Moreover, defense counsel is afforded the opportunity to argue her case during her closing argument, and that is what she did.

In sum, the Court concludes that defense counsel's conduct throughout the course of the trial was entirely proper, was not inconsistent with substantial justice, and did not result in a miscarriage of justice.

Meiselman also claims that the Court erred in admitting into evidence a videotape showing her conducting daily activities. Meiselman also argues that the Court should have permitted the introduction of her diplomas into evidence to refute the allegation that she was not a doctor. As noted above, a litigant's disagreement with the Court's evidentiary rulings generally is not a basis for granting a Rule 59 motion. *See Ullman,* 152 F.Supp.2d at 326; *Farr Man Coffee,* 1993 WL 328854 *1. Further, the plaintiff has not presented the Court with any legal argument or precedent that the Court overlooked in reaching its evidentiary conclusions. Indeed, the Court finds that its evidentiary rulings are not inconsistent with substantial justice. *See* Fed.R.Civ.P. 61. Thus, the Court finds Meiselman's claim that the Court's evidentiary decisions resulted in a seriously erroneous verdict to be without merit.

Just prior to trial, Meiselman submitted a letter asking the Court to recuse itself on the ground that in a previous case in front of this Court, she was not pleased with the result. The Court denied her application, which she renews in the present motion. There was no reason then, and there is no reason now for the Court to recuse itself. The plaintiff's request and current argument are tantamount to attempt to judge-shop, which is an impermissible practice. There being no reason for the Court to

recuse itself, the Court finds that its decision to stay on this case did not result in an egregious verdict.

In sum, the Court is not "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Atkins,* 143 F.3d at 102. The plaintiff's assertions regarding altered evidence, lying witnesses, improper conduct by both attorneys, and erroneous evidentiary decisions are conclusory and belied by the record. Her arguments are simply an attempt to re-litigate the case following a result that was a disappointment to her. Moreover, any alleged error was harmless, *see* Rule 61, and did not result in a verdict that was "seriously erroneous," a "miscarriage of justice," or "egregious." *See DLC Management,* 163 F.3d at 133; *Atkins,* 143 F.3d at 102.

Meiselman also asks the Court to vacate the judgment on the ground that the videotape constituted "surprise" under Rule 60(b)(3). This motion is also denied. The defendants filmed the videotape of the plaintiff during the trial, which is a perfectly proper procedure. When the tape was complete, it was given to defense counsel who immediately turned it over to the plaintiff's attorney. The plaintiff and her attorney were given an opportunity to view the tape during a recess prior to its admission. Moreover, a trial is a search for the truth, and the videotape was part of that search. Accordingly, the Court finds now, as it did then, that the videotape was not a surprise that prejudiced the plaintiff.

Meiselman also uses the phrases "fraud" and "newly discovered evidence" in her arguments supporting her Rule 60(b) motion. However, she does not specify the fraudulent conduct or describe the newly discovered evidence. Conclusory allegations of fraud and newly discovered evidence are insufficient to support a Rule 60(b) motion. Accordingly, that motion is denied.

Based on the foregoing, and having given the parties an opportunity for oral argument, it is hereby

**ORDERED,** that the plaintiff's motion for a new trial or to vacate the judgment pursuant to Rules 59, 60, and 61 is **DE-NIED.**